113 N.J. Super. 361 (1971)
273 A.2d 790
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MORRIS A. GUIENDON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 8, 1971.
Decided February 17, 1971.
*362 Before Judges GOLDMANN, LEONARD and MOUNTAIN.
Mr. Bernard V. Kelly argued the cause for appellant (Messrs. Shackleton and Kelly, attorneys).
*363 Mr. Remo M. Croce, Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
PER CURIAM.
Plaintiff appeals from a County Court judgment sentencing him as a second offender under the drunken driving statute, N.J.S.A. 39:4-50(a). The court assessed no fine, but imposed $25 costs and a 90-day county jail sentence. Sentence has been stayed pending the outcome of the appeal.
Defendant's first arrest for drunken driving was on December 28, 1969. Before he could be tried on that charge he was again arrested for drunken driving on February 6, 1970. He was then tried on the first charge on February 19, 1970 and found guilty. Trial on the second charge was held on April 27, 1970, and again defendant was found guilty. He was then sentenced as a second offender.
Defendant first argues that he could not be sentenced as a second offender because the second violation occurred before sentence was imposed for the first offense. He relies on our opinion in State v. Johnson, 109 N.J. Super. 69 (App. Div. 1970), where we dealt with the Uniform Narcotic Drug Law, N.J.S.A. 24:18-1 et seq. We there held that a defendant convicted of violating that law could not be punished as a second offender under N.J.S.A. 24:18-47(c) (2) when the second violation occurred and the indictment based thereon was entered prior to his first conviction under the act. Here, however, we deal with the drunken driving statute, which is quite differently worded and which, in State v. Deckert, 69 N.J. Super. 105 (Cty. Ct. 1961), was construed to permit conviction as a second offender in circumstances such as are here present.
We considered the effect of Deckert in the Johnson case because we were sensitive to its possible impact upon our own construction of the Uniform Narcotic Drug Law, and held that the drunken driving statute construed in that *364 case could not control the Johnson situation. However, the rationale of Deckert and the language of N.J.S.A. 39:4-50(a) are controlling. The statute first provides that a drunken driver shall be subject, "for the first offense," to a fine of $200 to $500, imprisonment for 30 days to 3 months, or both, and suspension of his driver's license for 2 years from the date of his conviction or until he reached 21, whichever was the greater period of time. The statute then goes on to state that, "for a subsequent violation," imprisonment shall be for three months and the driver's license forfeited for ten years  mandatory language. The use of the words "for a subsequent violation" distinguishes the drunken driving statute from the one considered in Johnson.
Accordingly, we affirm the conviction.
Defendant's only other argument is that under the circumstances of his case, imprisonment for 90 days would amount to cruel and unusual punishment, in violation of his constitutional rights. The basis for this contention is defendant's claim that he suffers from claustrophobia. Jail, he says, would have deleterious effects upon him, for he cannot tolerate a closed space. The only proof advanced in support of this claim was the testimony of Dr. Edward Dengrove, a neuro-psychiatrist, who examined defendant one month after he had been found guilty on the second charge of drunken driving. There was but a single examination, and the doctor's diagnosis must have been based almost entirely on what defendant told him of his subjective complaint.
In his letter opinion dealing with the argument that the mandatory sentence constituted cruel and unusual punishment because of defendant's claimed claustrophobia, the judge observed that there are, of course, varying degrees of mental illness and that both medical and psychiatric attention were available at either the county jail or at the neighboring State Hospital at Marlboro, should the same be required. He concluded that the three-month jail sentence did not amount to cruel and unusual punishment.
*365 In affirming the sentence we emphasize that if at any time there should be any manifestation of genuine claustrophobia, the authorities in charge of the institution where defendant is confined will at once call for all medical and psychiatric services available to the Department of Institutions and Agencies in connection with its administration of correctional institutions.
The judgment is affirmed.