689 A.2d 876

STATE OF NEW JERSEY, PLAINTIFF, v.
GREGORY OLIVER, DEFENDANT.

Superior Court of New Jersey
Law Division
Passaic County

Decided November 8, 1996.

*Steven Brizek,* Senior Assistant Passaic County Prosecutor, for plaintiff (*Ronald S. Fava,* Passaic County Prosecutor, attorney).

*Thomas C. Kaiser* for defendant.

RIVA, J.S.C.

This case involves for the first time in New Jersey the application of *N.J.S.A.* 2C:43–7.1, the "Persistent Offenders Accountability Act," also known as the "Three Strikes and You're In Act" in the sentencing of a defendant.[1] This Act attempts to deal with the crime problem posed to society by dangerous and repetitive criminals by incarcerating them for life without parole.[2] It is limited to persons convicted on three separate occasions of certain designated offenses.[3]

Tried to a jury, the defendant, Gregory Oliver, was convicted on September 20, 1996, of first degree robbery, in violation of *N.J.S.A.* 2C:15–1; second degree aggravated assault, in violation of *N.J.S.A.* 2C:12–1b(1); and third degree aggravated assault, in violation of *N.J.S.A.* 2C:12–1b(2). He was acquitted on the charge of attempted murder.

The evidence revealed that on December 10, 1995, Gregory Oliver and James Fisher entered an abandoned apartment located in Building 10 of the Christopher Columbus Projects in Paterson. While Fisher was engaged in a conversation with Leon Johnson,

---

[1] This opinion deals with the statutory application of the Act to defendant. It also considers the Act's constitutionality generally and, specifically, as it is applied to defendant. The court, however, does not consider the actual sentencing factors as they go beyond the scope of this opinion and were addressed on the record at the time of sentencing.

This opinion has been filed with the Clerk to become part of the record with the consent of both the prosecutor and defense counsel.

[2] This Act became effective on June 22, 1995.

[3] The Act applies to certain offenses which constitute "strikes." They include murder, aggravated manslaughter, kidnaping, certain types of aggravated sexual assault, robbery and car jacking.

Oliver struck Johnson in the back of the head with a four foot metal pipe and took from him $100 and crack cocaine, which he later shared with Fisher.

As a result of Oliver's actions, Johnson received a blood clot to his brain and several fractures to his skull. He also suffered from swelling and abrasions to the back of his head and bleeding to his left ear. His scalp was swollen and bruised. He was in a coma for about four days and sustained permanent brain damage.

According to Johnson's neurosurgeon, Dr. Charles Curry, who testified at the trial, Johnson would have died without an operation. Instead, a two hour operation was performed on him and about three per cent of his brain was removed. The victim was confined to the hospital for several weeks.

Although the incident occurred almost a year ago, Johnson still suffers from recent memory loss and impaired attention span. He continues to complain of dizziness, light headedness and headaches.

## I.

Preliminarily, the court considers whether the "Three Strikes and You're In Act" is constitutional. Because this is a case of first impression in New Jersey, the court narrowed its focus on the most common constitutional arguments raised throughout the country pertaining to "three strikes" legislation generally.[4]

## A.

### Ex Post Facto

The first constitutional issue is whether the Act violates the Ex Post Facto Clause of both the federal and state constitutions because it utilizes defendant's convictions which were committed

---

[4] The Court notes that no briefs were filed regarding the constitutionality of the Act.

before the Act's enactment in order to enhance the defendant's sentence. *U.S. Const.,* art. I, § 10, cl. 1; *N.J. Const.,* art. IV, § 7, ¶ 3. This court holds that the Act is not ex post facto under either the federal or state constitutions.

The Federal and New Jersey courts have held that a statute which provides for increased punishment for an offender who has previously been convicted is not ex post facto merely because the previous conviction or convictions took place before its enactment. *Gryger v. Burke, Pa.,* 334 *U.S.* 728, 68 *S.Ct.* 1256, 92 *L.Ed.* 1683 (1948), *reh'g denied,* 335 *U.S.* 837, 69 *S.Ct.* 13, 93 *L.Ed.* 389 (1948); *U.S. v. Ilacqua,* 562 *F.*2d 399 (6th Cir.1977), *cert. denied,* 435 *U.S.* 906, 98 *S.Ct.* 1453, 55 *L.Ed.*2d 497 (1978); *Pettway v. U.S.,* 216 *F.*2d 106 (6th Cir.1954); *Wilson v. U.S.,* 205 *F.*2d 567 (9th Cir. 1953); *Beland v. U.S.,* 128 *F.*2d 795 (5th Cir.1942), *cert. denied,* 317 *U.S.* 676, 63 *S.Ct.* 157, 87 *L.Ed.* 543 (1942), *reh'g denied,* 317 *U.S.* 710, 63 *S.Ct.* 205, 87 *L.Ed.* 566 (1942); *Alaway v. U.S.,* 280 *F.Supp.* 326 (C.D.CA.1968); *U.S. v. Platt,* 31 *F.Supp.* 788, 793 (D.Ct.Tex.1940); *In re Caruso,* 10 *N.J.* 184, 89 *A.*2d 661 (1952); *State v. Phillips,* 154 *N.J.Super.* 112, 380 *A.*2d 1197 (Law Div. 1977), *aff'd,* 169 *N.J.Super.* 452, 404 *A.*2d 1270 (App.Div.1979). This is so because the law does not punish the defendant for the prior offense, but merely increases the punishment for the instant offense.

The punishment mandated under the Act is for a third "strike," not a first or second strike. The sentences previously imposed on the defendant are not enhanced by his third conviction. The earlier convictions or strikes merely provide the defendant's background to be considered in sentencing for the third offense. Thus, only the third strike triggers the heavier penalty under the Act. *See Phillips, supra,* 154 *N.J.Super.* at 119, 380 *A.*2d 1197 (1977), *aff'd,* 169 *N.J.Super.* 452, 404 *A.*2d 1270 (1979) (subsequent offender provisions such as that contained in current drinking-driving statute, *N.J.S.A.* 39:4–50, do not undertake to punish again for prior offenses and are not violative of ex post facto provisions of federal and state constitutions); *State v. Nugent,* 152 *N.J.Super.*

557, 378 *A.2d* 95 (1977) (generally, additional punishment for recidivists does not necessarily create ex post facto problems where additional punishment comes as a result of subsequent offense); *State v. Sturn,* 119 *N.J.Super.* 80, 83, 290 *A.2d* 293 (App.Div.1972), *certif. denied,* 61 *N.J.* 157, 293 *A.2d* 387 (1972) (use of prior conviction to invoke second offender penalties does not violate ex post facto provisions of federal and state constitutions); *but see, State v. Cannon,* 94 *N.J.Super.* 66, 226 *A.2d* 755 (Law Div.1967) (use of prior conviction to enhance penalty under a subsequently enacted statute is ex post facto and invalid).

Because defendant's sentence is for an offense that occurred after the effective date of the Act, there is no ex post facto violation. Accordingly, the Ex Post Facto Clause does not preclude this court from considering defendant's convictions prior to the Act's enactment as strikes for purposes of sentencing.

### B.

### Separation of Powers

The next constitutional issue is whether the Act violates the Separation of Powers Doctrine for any of the following reasons: (1) it vests in the prosecutor "veto" power over sentencing under it; or (2) it removes the court's right to exercise discretion during the sentencing process; or (3) it unlawfully delegates to the Executive Branch the legislative function of setting sentences by transferring sentencing power from judges to prosecutors without providing "guidelines."

The federal and state constitutions provide for the separation of the three branches of government. The New Jersey Constitution provides:

> The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution.

> [N.J. Const., art. III, ¶ 1.] Legislation which violates the Separation of Powers Doctrine is thus void.

Although the prosecutor has discretion to determine what charges to file and whether to negotiate plea agreements, this Act does not confer upon the prosecutor "veto" power over the sentencing under it. The application of the Act is limited to persons convicted on three separate occasions of certain designated offenses. Thus, once an offender falls within the scope of the Act, the sentence is mandatory. The law is unambiguous on this point and requires that every person convicted on a third and subsequent occasion of any of the specified crimes shall be sentenced to a term of life imprisonment with no eligibility for parole. Therefore, since the sentence is mandatory, there is no room for prosecutorial discretion.

Furthermore, the Act does not infringe upon the court's discretion in sentencing. Indeed, such an argument would require this court incorrectly to assume that the sentencing authority is vested solely in the Judiciary and that the Judiciary has a constitutionally-based right to determine the length of any particular sentence. However, on the contrary, our courts have consistently held that the determination of penalties for crimes is a legislative function, not a judicial one. *See State v. Lagares,* 127 *N.J.* 20, 601 *A.*2d 698 (1992); *State v. Smith,* 148 *N.J.Super.* 219, 372 *A.*2d 386 (Cty.Ct.1977), *aff'd,* 169 *N.J.Super.* 98, 404 *A.*2d 331, *certif. granted,* 82 *N.J.* 292, 412 *A.*2d 798, *rev'd on other grounds,* 85 *N.J.* 193, 426 *A.*2d 38 (1981). A trial court does not have the right to do whatever it pleases. The court's discretion in sentencing is limited by the sentencing ranges given to it by the Legislature. *See State v. Des Marets,* 92 *N.J.* 62, 455 *A.*2d 1074 (1983) (Graves Act's preclusion of judicial suspension was not unconstitutional). Furthermore, it is within the power of the Legislature to provide the minimum and maximum terms of a sentence. *State v. Hampton,* 61 *N.J.* 250, 273, 294 *A.*2d 23 (1972).

It goes without saying that the trial judge is best suited to determine an appropriate and fair sentence for a convicted defendant based upon the judge's knowledge, experience and judgment in this area. This is because the trial judge has the opportunity to

observe the defendant; to learn the extent and the details of his criminal history; to hear the specific circumstances of the crime and the impact on its victims; and to compare the defendant and the crime with other offenders and crimes in the community. While the trial judge is in the best position to fashion a just punishment that meets the demands of society for protection and retribution, this court finds no constitutional power on the part of the trial judge to make that determination.

The Act does not transfer sentencing discretion from judges to prosecutors and, therefore, the danger of uneven application of the Act by prosecutors is non-existent. In *State v. Vasquez*, 129 *N.J.* 189, 196, 609 *A.*2d 29 (1992), the Court noted that since *N.J.S.A.* 2C:35–12 vests sentencing power in the prosecutor, judicial oversight was mandated to protect against arbitrary and capricious prosecutorial decisions. In *Lagares, supra*, 127 *N.J.* 20, 601 *A.*2d 698 (1992), after recognizing that *N.J.S.A.* 2C:43–6f takes effect only on the prosecutor's application, the Court required that guidelines be adopted to assist prosecutorial decision-making with respect to applications for enhanced sentences under section 6f to prevent an unconstitutional delegation of legislative authority to alter the sentencing process. In *State v. Leonardis*, 71 *N.J.* 85, 363 *A.*2d 321 (1976) (*Leonardis I* ), it was held that statewide Pretrial Intervention programs should be implemented according to uniform guidelines under which defendants accused of any crime shall be eligible for admission. Admission is measured according to the offense with which the defendant is charged and the defendant's amenability to correction and responsiveness to rehabilitation. In addition, the defendant is accorded an informal hearing before the designated judge for a county at every stage of his association with a PTI project where his admission, rejection or continuation in the program is put in question.

With respect to applications for a life sentence under the Act, prosecutorial guidelines are not necessary nor required because the Legislature has fixed the penalty mandated under the Act and did not provide for prosecutorial "veto" power of a trial judge's

decision. The court is satisfied that the dangers of prosecutorial arbitrariness which troubled our Supreme Court in *Vasquez, Lagares* and *Leonardis* simply do not exist with the application of this statute. Accordingly, the court holds there is no separation of powers problem with the Act.

## C.

### Cruel and Unusual Punishment

■ The court also considers whether imprisoning defendant for life violates the prohibition against cruel and unusual punishment contained in the Eighth Amendment of the Federal Constitution and Article I, ¶ 12 of the New Jersey Constitution. *Hutto v. Finney,* 437 *U.S.* 678, 98 *S.Ct.* 2565, 57 *L.Ed.*2d 522 (1978), *reh'g denied,* 439 *U.S.* 1122, 99 *S.Ct.* 1035, 59 *L.Ed.*2d 83 (1979) (the federal ban against cruel and unusual punishment is applicable to the states through the Due Process Clause of the Fourteenth Amendment). In this case, defendant does not argue that the New Jersey Constitution is more protective than the Federal Constitution.

Although the Legislature has the power to set the punishment for criminal offenses, this power is not absolute. It is subject to the prohibition against cruel and unusual punishment.

■ The federal and state constitutions require this court to follow a three part inquiry. First, does the punishment for the crime conform with contemporary standards of decency? Secondly, is the punishment grossly disproportionate to the offense? Thirdly, does the punishment go beyond what is necessary to accomplish any legitimate penological objective? *Gregg v. Georgia,* 428 *U.S.* 153, 173, 96 *S.Ct.* 2909, 2925, 49 *L.Ed.*2d 859, 874–75 (1976) (plurality opinion) (upholding states' right to impose death penalty under federal constitution); *State v. Maldonado,* 137 *N.J.* 536, 556–57, 645 *A.*2d 1165 (1994); *State v. Ramseur,* 106 *N.J.* 123, 169, 524 *A.*2d 188 (1987); *Des Marets, supra,* 92 *N.J.* at 82, 455

A.2d 1074 (1983); *State v. Fearick,* 69 *N.J.* 32, 350 A.2d 227 (1976); and *Hampton, supra,* 61 *N.J.* at 273–74, 294 A.2d 23 (1972).

Comparing New Jersey's Act with "three strikes" laws of other jurisdictions, this court concludes that it is consistent with contemporary standards of decency. There is nothing in the legislative, judicial, and cultural history and traditions of our state that would lead this court to conclude that there is a significantly different attitude toward the penalty imposed under the Act here from that prevailing throughout the country. Indeed, at least twenty-two other states and the federal government have similarly enacted "three strikes" laws.[5] Of those, seven states and the federal government impose a life sentence without parole for a third conviction of certain enumerated offenses.[6]

The constitutional ban on cruel and unusual punishment also guards against punishment that is grossly disproportionate in relation to the crime. *Ramsuer, supra,* 106 *N.J.* at 174, 524 A.2d 188 (1987); *Des Marets, supra,* 92 *N.J.* at 82, 455 A.2d 1074 (1983). Courts will not interfere with a prescribed form of penalty unless it is clearly arbitrary and without a rational relationship to an offense, or it is disproportionate to the offense. *State v. Guiendon,* 113 *N.J.Super.* 361, 273 A.2d 790 (App.Div.1971). In the absence of a "substantial showing" that a penalty is disproportionate to the offense, the punishment will stand. *Des Marets, supra,*

[5] States which have enacted "three strikes" laws include: Arkansas, California, Colorado, Connecticut, Florida, Georgia, Indiana, Kansas, Louisiana, Maryland, Montana, Nevada, New Mexico, North Carolina, Pennsylvania, South Carolina, Tennessee, Utah, Vermont, Virginia, Washington and Wisconsin. Walter J. Dickey, "The Impact of 'Three Strikes and You're Out' Laws: What Have We Learned?", Campaign for an Effective Crime Policy, (September 1996), p.p. 11–12 (citing Alan Karpelowitz, " 'Three Strikes' Sentencing Legislation Update," National Conference of State Legislatures, (November 1994) and Donna Lyons and Adelia Lee, "Crime and Sentencing State Enactments 1995," NCSL State Legislative Report (November 1995)).

[6] The seven states are: Georgia, Indiana, Louisiana, Maryland, Tennessee, Washington and Wisconsin. *Id.*

92 *N.J.* at 82, 455 *A.*2d 1074 (1983). No such showing was made by defendant in this case.

■ As to a mandatory custodial sentence constituting cruel and unusual punishment, the court considers whether under the circumstances the nature of the punishment is grossly disproportionate to the offense and goes beyond any legitimate penal goal so as to shock the general conscience and violate principles of fundamental fairness. *State v. Muessig,* 198 *N.J.Super.* 197, 486 *A.*2d 924 (App.Div.1985), *certif. denied,* 101 *N.J.* 234, 501 *A.*2d 912. Since defendant has failed to make such a showing, the court must respect the legislative will and impose the sentence provided for under the Act. *Muessig, supra,* 198 *N.J.Super.* at 201, 486 *A.*2d 924 (1985).

With respect to the proportionality issue, this court notes that every defendant who is convicted of three strikes will receive a sentence of life imprisonment without parole. Under the Act, the Legislature has determined, as a matter of policy, that mitigating circumstances cannot be used to justify a departure from the stiff penalty imposed on repeat offenders of the most serious crimes.

The repetition of defendant's criminal conduct, together with the failure of previously imposed sentences to deter him from committing further violent acts, justifies a life sentence. It is a reasonable means of deterring this defendant and others similarly situated from committing future violent acts. Under these circumstances, imposing a life sentence for this defendant would not be disproportionate to the underlying offense. *See Harmelin v. Michigan,* 501 *U.S.* 957, 111 *S.Ct.* 2680, 115 *L.Ed.*2d 836 (1991) (sentence of life imprisonment without parole for the crime of possession of cocaine did not violate the Eighth Amendment); *Rummel v. Estelle,* 445 *U.S.* 263, 265, 100 *S.Ct.* 1133, 1134–35, 63 *L.Ed.*2d 382 (1980) (sentence of life imprisonment for three minor theft felonies did not constitute cruel and unusual punishment); *Hampton, supra,* 61 *N.J.* at 277, 294 *A.*2d 23 (1972) (statutory provision for a minimum sentence of 30 years and maximum of life

imprisonment for kidnaping does not constitute cruel and unusual punishment).

Regarding whether the punishment goes beyond what is necessary to accomplish a legitimate penological objective, the court must decide whether the enactment of the Act was a legitimate exercise of the Legislature's power. *See Ramsuer, supra,* 106 *N.J.* at 178, 524 *A.*2d 188 (1987). Unless the punishment "is so clearly arbitrary and without rational relation to the offense" so as to compel a finding that the Legislature has exceeded its "very wide discretion" in this area, the court must conclude that this power was legitimately exercised. *Id.* (citing *State v. Smith,* 58 *N.J.* 202, 211, 276 *A.*2d 369 (1971)).

Among the well-recognized penological purposes in sentencing are rehabilitation, retribution and deterrence. *Georgia, supra,* 428 *U.S.* at 183–184, 96 *S.Ct.* at 2929–30, 49 *L.Ed.*2d at 880–881 (1976); *Ramseur, supra,* 106 *N.J.* at 179, 524 *A.*2d 188 (1987). By the imposition of a mandatory life sentence under the Act, it is clear that the Legislature did not intend rehabilitation. Certainly, however, both retribution and deterrence are legitimate penological goals advanced by this legislation.

One of the purposes behind the Act is to deter offenders from repeating their crimes by segregating them from society upon the commission of three strikes. This segregation and its duration are based not merely on a defendant's most recent offense but also on the criminal propensities he has repeatedly demonstrated over a period of time. In this case, incapacitating the defendant for life will advance the legitimate penological goal of deterring him from committing violent crimes in the future. Hopefully, the application of the Act in this case will also deter other offenders from repeating such heinous crimes.

### D.

### Due Process

With respect to Due Process of law, the court considers the following issues: (1) Is the State required to formally charge a

defendant as a "persistent offender?" (2) Is the statute void for vagueness? (3) Does defendant have a right to a jury trial at sentencing? (4) What is the proper standard for proving a defendant's prior convictions?

Defendant does not assert that the State Constitution vis-a-vis the Federal Constitution affords greater protection in this area. In fact, the State Constitution is generally construed identical in scope, import, and purpose with the Federal Constitution. *Washington Nat. Ins. Co. v. Board of Review of N.J. Unemployment Compensation Commission,* 1 *N.J.* 545, 64 *A.*2d 443 (1949). Thus, these issues will be decided under the principles of both federal and state constitutional law.

1.

There is nothing contained in the Act that requires the State to file a formal charge in order to sentence defendant under the Act. The question is, therefore, whether the failure to adequately notify and warn a defendant prior to trial that the Act may be imposed upon a conviction is violative of defendant's due process rights. This court holds that filing a formal charge against a defendant is unnecessary and not required by the Due Process Clause.

It is axiomatic that every essential element of a crime must be included in a charging document. The primary purpose of this requirement is to inform the accused of the nature of the accusation so that he or she can prepare an adequate defense. However, the Act in this case does not create a separate offense, but merely enhances punishment at the penalty phase of defendant's case. Indeed, the Act is a sentencing statute and not a statute defining the elements of a crime. It is essentially a sentence enhancement statute which is based on the past criminal history of a defendant. Hence, since no new crime is being charged, no charging document is required. *See United States v. Dunn,* 946 *F.*2d 615, 619 (9th Cir.) (recidivist statute providing for sentence enhancement for previous felonies does not require the prior felonies to be

included in the indictment), *cert. denied,* 502 *U.S.* 950, 112 *S.Ct.* 401, 116 *L.Ed.*2d 350 (1991). *United States v. McGatha,* 891 *F.*2d 1520 (1990) (since prior felony convictions necessary for sentencing were not an element of the offense charged, they need not be set forth in the indictment nor proved beyond a reasonable doubt).

In *Nichols v. McCormick,* the court held that a sentencing factor need not be included in the charging document even when the statute allows the sentencing court to impose a penalty in excess of that permitted by the underlying offense. *Nichols v. McCormick,* 929 *F.*2d 507, 509 (9th Cir.1991), *cert. denied,* 502 *U.S.* 1115, 112 *S.Ct.* 1226, 117 *L.Ed.*2d 461 (1992) (citing *LaMere v. Risley,* 827 *F.*2d 622 (9th Cir.1987)). In addition, the Legislature has substantial discretion in defining whether a fact constitutes an element of a crime or is a sentence enhancement factor. *See McMillan v. Pennsylvania,* 477 *U.S.* 79, 106 *S.Ct.* 2411, 91 *L.Ed.*2d 67 (1986). Indeed, a defendant's criminal history is a factor which has traditionally been considered by sentencing courts and the Legislature is well within its discretion in defining past crimes as sentencing factors rather than elements of a charge. *See McGatha, supra,* 891 *F.*2d at 1526 (recidivist statutes have historically been recognized as sentencing statutes, not as separate offense statutes).

This court acknowledges that there are statutes which require an application by the prosecutor before a certain sentence can be imposed. *See N.J.S.A.* 2C:44–3 (statute pertaining to extended terms). On the other hand, there are numerous statutes which mandate the imposition of either imprisonment or a period of parole ineligibility without requiring an application by the State.[7]

---

[7] *See, e.g., N.J.S.A.* 2C:43–6c and *N.J.S.A.* 2C:43–7c ("Graves Act"); *N.J.S.A.* 2C:43–6g and *N.J.S.A.* 2C:43–7d (Machine Guns and Assault Firearms); *N.J.S.A.* 2C:11–3a(1)(3) & b (Murder); *N.J.S.A.* 2C:13–1c(2) (Kidnapping); *N.J.S.A.* 2C:11–5b (Death by Auto or Vessel–Operator Under the Influence); *N.J.S.A.* 2C:12–2b(2) (Recklessly Endangering Another Person); *N.J.S.A.* 2C:14–6 (Sex Offenders); *N.J.S.A.* 2C:29–6a(1) & (2) (Implements for Escape); *N.J.S.A.* 2C:43–6e (State Tax Law Violations); *N.J.S.A.* 2C:35–3 and *N.J.S.A.* 2C:43–7c (Leaders

The "Three Strikes and You're In Act" is added to this list because it imposes a mandatory term of life imprisonment and does not require the prosecutor to make an application to sentence the defendant under it.

2.

A statute which fails to provide explicit standards to prevent arbitrary and discriminatory enforcement would be unconstitutionally vague under the Fourteenth Amendment to the Federal Constitution. Regarding this Act, however, reasonable people can understand what conduct will trigger its application. In this case, the plain meaning of the Act made this defendant amenable to sentencing under it. Accordingly, the court concludes that the Act survives any vagueness challenge to it.

3.

Under the Act, a trial court must conduct a sentencing hearing. *N.J.S.A.* 2C:43–7.1d formulates the procedures to be followed during a sentencing proceeding. *N.J.S.A.* 2C:43–7.1d provides as follows:

d. The court shall not impose a sentence of imprisonment pursuant to this section, unless the ground therefor has been established at a hearing after the conviction of the defendant and on written notice to the defendant of the ground proposed. The defendant shall have the right to hear and controvert the evidence against him and to offer evidence upon the issue. Prior convictions shall be defined and proven in accordance with N.J.S. 2C:44–4.

This statute is similar to the language contained in *N.J.S.A.* 2C:44–6e pertaining to the imposition of an extended term upon a defendant. *N.J.S.A.* 2C:44–6e was designed to satisfy due process

---

of Narcotics Trafficking Network); *N.J.S.A.* 2C:35–4 and *N.J.S.A.* 2C:43–6f (Maintaining or Operating a CDS Substance Facility); *N.J.S.A.* 2C:35–5b(1) and *N.J.S.A.* 2C:43–6f (Manufacturing, Distributing or Dispensing Heroin or Cocaine); *N.J.S.A.* 2C:35–5b(6) and *N.J.S.A.* 2C:43–6f (Manufacturing, Distributing or Dispensing LSD or Phencyclidine); *N.J.S.A.* 2C:35–6 and *N.J.S.A.* 2C:43–6f (Employing a Juvenile in a Drug Distribution Scheme); *N.J.S.A.* 2C:35–7 and *N.J.S.A.* 2C:43–6f (Controlled Dangerous Substance Near or on School Property); and *N.J.S.A.* 2C:17–1e (Aggravated Arson—Health Care Facility or Physician's Office).

by requiring a hearing to determine if the criteria for an extended sentence has been established. *State v. Hubbard,* 176 *N.J.Super.* 174, 183, 422 *A.*2d 471 (Resent. Panel 1980); *see also, State v. Maguire,* 84 *N.J.* 508, 518, 423 *A.*2d 294 (1980).

Under this Act, the defendant is afforded written notice and a hearing at which time the State must establish the ground proposed for imposition of the life sentence. *N.J.S.A.* 2C:43–7.1d. The defendant also has the right to hear and controvert evidence against him and to offer any evidence upon the issue. Although the Act does not require a formal application to be made by the prosecutor, a written notice in this case was nevertheless personally served upon both defendant and defense counsel prior to the sentencing date.

After a hearing, it is the court, not a jury, that determines whether the defendant has a criminal history and specifies those convictions on the record. The United States Supreme Court has repeatedly held that a defendant does not enjoy a constitutional right to a jury determination as to the appropriate sentence to be imposed even where the sentence turns on specific findings of fact. *Libretti v. United States,* — *U.S.* —, 116 *S.Ct.* 356, 133 *L.Ed.*2d 271 (1995); *Walton v. Arizona,* 497 *U.S.* 639, 110 *S.Ct.* 3047, 111 *L.Ed.*2d 511 (1990); *McMillan, supra,* 477 *U.S.* at 93, 106 *S.Ct.* at 2420, 91 *L.Ed.*2d at 67 (Sixth Amendment does not require jury sentencing when a statute makes possession a sentencing factor). Moreover, there is a substantial difference between facts which relate to the seriousness of the crime charged and facts which show the defendant's prior, unrelated criminal history. *McGatha, supra,* 891 *F.*2d at 1526 (recidivist laws have no relation to the circumstances of the wrongdoing constituting the most recent offense; they do not relate to determining what the accused has done, but what the state has previously determined that he has done).

The Act is more like those sections of the Criminal Code under which a court determines a sentence based on the offender score which is determined by past criminal record. *See N.J.S.A.* 2C:14–

6 (requiring a minimum mandatory parole ineligibility period for persons convicted of a second or subsequent offense for aggravated sexual assault, sexual assault or aggravated criminal sexual contact) and *N.J.S.A.* 2C:43–6e (mandatory imprisonment for persons convicted of a third or subsequent offense involving state taxes). It is unlike a statute which enhances a sentence based on a fact. *See N.J.S.A.* 2C:43–6c ("Graves Act" possession of a deadly weapon during the commission of a crime) and *N.J.S.A.* 2C:35–7 (selling drugs within 1000 feet of a school zone). These kinds of facts aggravate the seriousness of the crime itself. Under a recidivist statute, the sole concern is whether one or more prior convictions exist. *State v. Herzog,* 112 *Wash.*2d 419, 771 *P.*2d 739 (1989).

As a practical matter, the only two questions of fact relevant to sentencing under the Act are whether certain kinds of prior convictions exist and whether defendant was the subject of those convictions. Therefore, a jury is not necessary to make these determinations. They can be made by the sentencing judge. While these are questions of fact, they are not the kinds of facts for which a jury trial would add to the safeguards available to a defendant. In fact, judges decide such questions of fact routinely at sentencing proceedings under the Code.[8] Accordingly, this court finds no constitutional bar to the provision of the law which allows a trial court to conduct the sentencing proceedings.

4.

■ Regarding the standard of proving a defendant's prior conviction, the Act in this case is silent. The federal courts have held that the application of a preponderance standard does not violate the Federal Constitution. *See Parke v. Raley,* 506 *U.S.* 20,

---

[8] A prior conviction may be proved by any evidence, including fingerprint records made in connection with a defendant's arrest, conviction or imprisonment, which reasonably satisfies the court that the defendant was convicted. *N.J.S.A.* 2C:44–4d. A certified copy of the judgment and sentence can be used to prove a prior conviction and the identity of the defendant, if contested, can be proved by fingerprints. In fact, both items constitute highly reliable evidence.

113 *S.Ct.* 517, 121 *L.Ed.*2d 391 (1992); *McGatha, supra,* 891 *F.*2d at 1526–27. However, *N.J.S.A.* 2C:1–13d provides guidelines for ascertaining the burden necessary to prove a fact which is not an element of the offense. This statute provides:

> d. When the application of the code depends upon the finding of a fact which is not an element of an offense, unless the code otherwise provides:
>
> (1) The burden of proving the fact is on the prosecution or defendant, depending on whose interest or contention will be furthered if the finding should be made; and
>
> (2) The fact must be proved to the satisfaction of the court or jury, as the case may be.
>
> [*N.J.S.A.* 2C:1–13d.]

This subsection is an independent provision, dealing exclusively with fact issues that are collateral to the basic criminal case. It is only when the application of the Code depends upon a finding of fact unrelated to an element of an offense that the Code allocates burdens under this subsection in accordance with the interest to be furthered. *See State v. Ingram [John Terra],* 98 *N.J.* 489, 493, 488 *A.*2d 545 (1985).

 Therefore, the proper standard of proof is "to the satisfaction" of the court or jury. It is an ambiguous standard, but is at least proof by a preponderance of the evidence; beyond that, the issue is left open to the courts. *State v. XYZ Corp.,* 119 *N.J.* 416, 423, 575 *A.*2d 423 (1990) (citations omitted).

In applying this standard, the court is satisfied that the defendant's prior criminal record as contained in the pre-sentence report is accurate and that defendant has several prior strikes under *N.J.S.A.* 2C:43–7.1a, namely, his 1973, 1979 and 1986 convictions. Moreover, defendant has not offered any evidence to the contrary. In fact, defendant conceded that the pre-sentence report was accurate.

## E.

## Equal Protection

The final constitutional issue to be decided is whether the Act violates the defendant's right to equal protection of law under the

federal and state constitutions. This court holds that under both constitutions there is no equal protection violation.

The thrust of the Equal Protection Clause of the Fourteenth Amendment is that all persons similarly situated should be treated alike. *Doe v. Poritz*, 142 *N.J.* 1, 91, 662 *A.*2d 367 (1995) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 *U.S.* 432, 439, 105 *S.Ct.* 3249, 3254, 87 *L.Ed.*2d 313, 320 (1985)). The federal equal protection analysis involves three different levels of review depending upon the type of right being affected. *Brown v. City of Newark*, 113 *N.J.* 565, 573, 552 *A.*2d 125 (1989). If, as in this case, the classification does not impact a "suspect" or "semi-suspect" class, or affect a fundamental right, the proper test to be applied is the "rational basis" test, i.e., the action must be rationally related to achieve a legitimate state interest. *State in Interest of L.M.*, 229 *N.J.Super.* 88, 94–95, 550 *A.*2d 1252 (App. Div.1988) (citing *Massachusetts Bd. of Retirement v. Murgia*, 427 *U.S.* 307, 312, 96 *S.Ct.* 2562, 2566, 49 *L.Ed.*2d 520 (1976)); *Barone v. Dept. Of Human Services*, 107 *N.J.* 355, 364–65, 526 *A.*2d 1055 (1987).

Where the Legislature has created a classification of nonsuspect offenders, our courts apply the traditional rational basis test for purposes of fixing penalties. *State in Interest of L.M., supra,* 229 *N.J.Super.* at 95, 550 *A.*2d 1252 (citing *State v. Corbitt,* 74 *N.J.* 379, 401, 378 *A.*2d 235 (1977), *aff'd,* 439 *U.S.* 212, 99 *S.Ct.* 492, 58 *L.Ed.*2d 466 (1980) (the Legislature may provide for different classifications of criminal offenders for purposes of punishment so long as there is some rational connection between the classification and proper legislative purpose.)). The United States Constitution permits qualitative differences in meting out punishment; and there is no requirement that two persons convicted of the same offense receive identical sentences. *In re State in Interest of K.V.N.*, 116 *N.J.Super.* 580, 283 *A.*2d 337 (App.Div. 1971), *aff'd,* 60 *N.J.* 517, 291 *A.*2d 577 (1972).

■ In applying the federal equal protection analysis to the case at hand, it is evident that the Act is rationally related to a legitimate state interest. In passing the Act, it appears that the Legislature intended to do the following: improve public safety by placing the most dangerous criminals in prison; reduce the number of serious repeat offenders by tougher sentencing; set proper and simplified sentencing practices that both the victims and persistent offenders can understand; and restore public trust in the Criminal Justice System.

■ The Legislature has broad discretion in determining what the public interest demands and what measures are necessary to protect that interest. The rational basis test requires only that the statute's means are rationally related a legitimate state interest, not that the means are the best way of achieving the interest. Classifying criminals into groups based on their having committed three strikes is rationally related to the goals of the Act. Thus, this court finds that the Act satisfies the rational basis test of the federal equal protection guarantee.

■ While "equal protection" does not appear in the New Jersey Constitution, our courts have recognized that Article I, ¶ 1, like the Fourteenth Amendment of the Federal Constitution, confers the right to equal treatment under the law. *Barone v. Department of Human Servs.*, 107 *N.J.* 355, 367, 526 *A.*2d 1055 (1987) (citing *Greenberg v. Kimmelman*, 99 *N.J.* 552, 568, 494 *A.*2d 294 (1985)). However, New Jersey has departed from the multi-tiered equal protection analysis of the Federal Constitution and employed a balancing test. *Poritz, supra*, 142 *N.J.* at 94, 662 *A.*2d 367; *Barone, supra*, 107 *N.J.* at 368, 526 *A.*2d 1055. This test considers the following: 1) the nature of the right affected, 2) the extent to which the government action interferes with that right, and 3) the public need for such interference. *Ibid.*

■ Applying this test, the court is satisfied the Act also comports with the State Constitution. Considering the state's interest in public safety, the sentence imposed does not unduly

punish defendants who have been convicted of three strikes. In addition, the court is not faced with a "suspect" or "semi-suspect" class, or fundamental right. Moreover, the Act does not unduly punish defendants, but rather is rationally related to the legitimate governmental interest of battling crime by punishing recidivists more severely than first time convicts because repeat offenders are more dangerous and thus more deserving of punishment. *See Lagares, supra,* 127 *N.J.* at 35, 601 *A.*2d 698; *see also, Poritz, supra,* 142 *N.J.* at 93, 662 *A.*2d 367 (citing *State v. Wingler,* 25 *N.J.* 161, 176, 135 *A.*2d 468 (1957) (creating separate classification for repetitive-compulsive sex offenders is not arbitrary and "has a rational basis." )). Therefore, this court finds that the public need to remove repeat offenders from the streets greatly outweighs a repeat offender's liberty rights. Thus, the equal protection analysis applied above for the Federal Constitution, i.e., the rational basis test, leads this court to the same conclusion in applying New Jersey's balancing test.

## II.

Having concluded that the Act is constitutional, the court considers next whether defendant falls under its purview. The State contends that the Act applies to defendant's sentence because his first degree robbery conviction for the instant offense is at least his third strike under the Act. In reaching this conclusion, the State contends that the court should count defendant's pre–Code convictions for robbery as strikes.

Defendant's prior criminal history is severe and extensive. His conviction for first degree robbery in this case represents his sixth conviction for a robbery offense. His first conviction occurred on April 4, 1973, when defendant was adjudged guilty of robbery, in violation of *N.J.S.A.* 2A:141–1. On July 12, 1979, defendant was again adjudged guilty of robbery (together with atrocious assault and battery), in violation of *N.J.S.A.* 2A:141–1. And, on January 3, 1986, defendant was adjudged guilty of robbery in the first

degree, in violation of *N.J.S.A.* 2C:15–1, on three separate indictments.

In connection with the 1986 convictions, defendant was sentenced to an 18–year term of imprisonment together with a 6–year period of parole ineligibility. An identical sentence was imposed on each of these indictments and made to run concurrently.[9] Defendant was released from jail on May 5, 1994.

Both sides agree that the Act applies only where the crime for which defendant is being sentenced was committed either within 10 years of the date of defendant's last release from confinement for commission of any crime or within 10 years of the date of the commission of the most recent of the crimes for which defendant has a prior conviction. *See N.J.S.A.* 2C:43–7.1c. In this case, defendant's crime occurred on December 10, 1995, and, therefore, falls within the 10 year period from the date of his last release from confinement.

The Act reads, in pertinent part, as follows:

a. Life Imprisonment Without Parole. A person convicted of a crime under any of the following: N.J.S. 2C:11–3; subsection a. of N.J.S. 2C:11–4; a crime of the first degree under N.J.S. 2C:13–1, paragraphs (3) through (6) of subsection a. of N.J.S. 2C:14–2; N.J.S. 2C:15–1; or section 1 of P.L.1993, c. 221 (c. 2C:15–2), who has on two or more prior and separate occasions been convicted of a crime under any of the foregoing sections or under any similar statute of the United States, this state, or any other state for a crime that is substantially equivalent to a crime under any of the foregoing sections, shall be sentenced to a term of life imprisonment by the court, with no eligibility for parole.

[*N.J.S.A.* 2C:43–7.1a.[10] ]

---

[9] The State concedes that defendant's three first degree robbery convictions in 1986 should be treated as one strike; nevertheless, the prosecutor pointed out, defendant may have had "three swings at the ball."

[10] *N.J.S.A.* 2C:43–7.1a refers simply to *N.J.S.* 2C:15–1 without distinguishing between first and second degree robbery. For purposes of this decision. however, the court is satisfied that reference to *N.J.S.* 2C:15–1 in *N.J.S.A.* 2C:43–7.1a was meant to apply only to first degree robbery. This conclusion follows from the fact that *N.J.S.A.* 2C:43–7b(1) specifically refers to second degree robbery.

The Act is clear that defendant's prior convictions must be for certain enumerated offenses under the Code of Criminal Justice or under any similar statute of this state for a crime that is substantially equivalent to a crime under any of the foregoing sections of *N.J.S.A.* 2C:43–7.1a. *Id.* The State contends that defendant's 1973 and 1979 pre–Code convictions under *N.J.S.A.* 2A:141–1 were "for a crime that is substantially equivalent to a crime" of first degree robbery and, therefore, should be counted as strikes. This court agrees.[11]

Under *N.J.S.A.* 2A:141–1 the maximum term of imprisonment for a robbery conviction was 15 years. In connection with his 1979 robbery conviction, defendant received a minimum term of imprisonment of 9 years and a maximum term of imprisonment of 12 years. Thus, defendant was exposed to a sentence within the 10 to 20 year range for his 1973 and 1979 pre-Code robbery convictions. Moreover, the actual sentence received by the defendant for the 1979 robbery conviction fell within the Code's first degree sentencing range.

In addition, the facts of defendant's 1979 conviction resemble the facts in this case.[12] With respect to the 1979 conviction, the victim there was walking toward the building located at 124 Hamilton Avenue in Paterson, on December 8, 1978, when she was approached from the rear by two individuals who struck her about the head with a hard object. They then proceeded to take $70 from her pocket. The victim knew one of her assailants who she later identified as Oliver. She was then taken to St. Joseph's

---

[11] The court notes that the defendant has pre-Code convictions for robbery in 1973 and 1979. While the State contends that both pre-Code convictions should be counted as strikes, the court need only consider the 1979 conviction as a pre-Code strike. Nevertheless, the court finds that the 1973 conviction is also a strike because defendant's jail exposure fell within the 10 to 20 year range for a first degree robbery conviction.

[12] In ascertaining the facts surrounding the 1979 robbery conviction, the court reviewed the pre-sentence report, victim's grand jury testimony and police reports.

Hospital Emergency Room and was treated for injuries to her head.

In the present case, defendant was convicted of striking the victim from the rear on the head with a pipe and taking cash and drugs. Thus, this court finds the nature and extent of the 1979 and 1995 crimes to be "substantially equivalent" to each other.

## Conclusion

Concluding that the Act is constitutional and defendant falls under the purview of the Act, this court is obliged to express the legislative will and impose the mandatory sentence provided for under the Act.[13] Accordingly, defendant Gregory Oliver is sentenced on the first degree robbery offense to the custody of the Commissioner of the Department of Corrections for a term of life imprisonment with no eligibility for parole.[14]

---

[13] In rendering its decision, the court fully set forth on the record its findings with respect to aggravating and mitigating factors enumerated under *N.J.S.A.* 2C:44–1 as to all counts.

[14] Under the Act, the defendant must serve at least 35 years of his sentence and must be at least 70 years old before he is eligible for early release subject to parole board determinations that he does not pose a danger to the community. *See N.J.S.A.* 2C:43–7.1e. In this case, defendant will be 77 years old before he is eligible for parole.

While the State seeks the imposition of a life sentence without parole, they alternatively filed a motion for an order imposing an extended term as a "persistent offender" under *N.J.S.A.* 2C:44–3a for the first degree robbery conviction. This court is satisfied by reference to defendant's criminal history that defendant is an extended term candidate as a "persistent offender" under *N.J.S.A.* 2C:44–3a. In accordance with *N.J.S.A.* 2C:43–7a(2), defendant is subject to a term of life imprisonment and pursuant to *N.J.S.A.* 2C:43–7b to a 25–year period of parole ineligibility. In accordance with *N.J.S.A.* 2C:43–7b, the court is clearly convinced that the aggravating factors substantially outweigh the mitigating factors with respect to the first degree robbery offense to justify the imposition of a 25–year period of parole ineligibility for this offense. But for the fact that the defendant is being sentenced under the Act, this court would have imposed a term of life imprisonment with a 25–year period of parole ineligibility for the first degree robbery offense. In view of the applicability of the Act to defendant's sentence, the State's motion is denied without prejudice.

 On the second degree aggravated assault offense, the defendant is sentenced to the Custody of the Commissioner of the Department of Corrections for a term of 10 years with a 5 year period of parole ineligibility. The defendant's sentence on the second degree aggravated assault offense shall run concurrent to the defendant's sentence on the first degree robbery offense, since he will be incarcerated for life without parole for this offense.[15]

Finally, the court merges the third degree aggravated assault offense into the second degree aggravated assault offense.[16]

---

[15] Regarding the sentence for the second degree aggravated assault offense, the court holds that this offense does not merge into the first degree robbery offense. The court is satisfied that it was not necessary for the jury to find "serious bodily injury" in order to convict defendant of first degree robbery. The fact that defendant was armed with a deadly weapon during the commission of the robbery alone elevated the crime to first degree robbery. In fact, the State's theory in elevating the robbery offense to first degree as set forth in the indictment was essentially that defendant was armed with a deadly weapon, namely a metal pipe or blunt instrument. Hence, no merger is required.

As a practical matter, the court's decision not to merge the second degree aggravated assault offense into the first degree robbery offense is immaterial, given the concurrent sentence imposed by the court.

The court did not impose an extended term for the second degree aggravated assault offense because it was limited to the imposition of only one extended term. *See N.J.S.A.* 2C:44–5a(2). Despite this decision, the court imposed a term of imprisonment in excess of the presumptive term and also a period of parole ineligibility for this offense. In balancing the aggravating and mitigating factors, the court was clearly convinced that the aggravating factors substantially outweighed the mitigating factors. *See N.J.S.A.* 2C:43–6b; *State v. Bogus*, 223 *N.J.Super.* 409, 538 *A.2d* 1278 (App.Div.1988), *certif. denied*, 111 *N.J.* 567, 546 *A.2d* 497 (1988) (reversing trial court's sentence imposing a period of parole ineligibility on a presumptive term).

[16] The court gave defendant jail time credits of 226 days and imposed the appropriate Violent Crime Compensation Board and Safe Neighborhood Services Fund Assessments.