745 A.2d 1165

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. GREGORY OLIVER, A/K/A "RED",
DEFENDANT–APPELLANT.

Argued October 25, 1999—Decided February 28, 2000.

*Robert L. Sloan,* Assistant Deputy Public Defender, argued the cause for appellant (*Ivelisse Torres,* Public Defender, attorney).

*Gary H. Schlyen,* Chief Assistant Prosecutor, argued the cause for respondent (*Ronald S. Fava,* Passaic County Prosecutor, attorney).

*Wendy Alice Way,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*John J.*

*Farmer, Jr.,* Attorney General, attorney; *Ms. Way* and *Bennett A. Barlyn,* Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

O'HERN, J.

In 1993, Richard Allen Davis, a six-time offender, on parole for his most recent offense, a sexual assault, broke into the Petaluma, California home of Polly Klaas, a twelve-year-old child. She and her friends had had a slumber party. Davis kidnaped, raped and killed Polly. A year and a half earlier, eighteen-year-old Kimber Reynolds had been murdered by a repeat offender in Fresno, California. Polly's murder was the turning point in the efforts of Kimber's father, Mike, to prevent the premature release from prison of dangerous criminals. Both victims' fathers became heavily involved in the legislative reaction to such shocking murders by paroled offenders. The efforts focused on various proposals. One proposal was for a "Three Strikes" law. A "Three Strikes" law is a shorthand expression for a law providing mandatory life imprisonment for certain third-time criminal offenders.[1] When President Clinton signed the Violent Crime Control and Law Enforcement Act of 1994 containing the federal version of three-strikes legislation, that act encouraged many states to follow suit. Violent Crime Control and Law Enforcement Act of 1994, *Pub.L. No.* 103–322, 108 *Stat.* 1796 (1994); Michael G. Turner, et al., *Three Strikes and You're Out Legislation: A National Assessment, Fed. Probation,* Sept. 1995, at 16. In 1995, the New Jersey Legislature passed a three-strikes bill entitled the Persistent Offender Accountability Act. *N.J.S.A.* 2C:43–7.1a. That law mandates a life sentence without parole for any person convicted on three separate occasions of certain violent crimes, such as murder, manslaughter, aggravated assault, kidnaping, sexual assault, rob-

---

[1] Another similar proposal is a "No Early Release Act," requiring certain violent offenders to serve 85% of their terms before becoming eligible for parole. The New Jersey Legislature enacted such a statute in 1997. *See N.J.S.A.* 2C:43–7.2.

bery, or illegal possession of a firearm or explosive. The central issue in this appeal is the constitutionality of that legislation.

I

The essential facts of the case are set forth in the reported opinion of the Law Division, 298 *N.J.Super.* 538, 689 *A.*2d 876 (Law Div.1996). On December 10, 1995, Gregory Oliver and James Fisher entered an abandoned apartment located in Paterson, New Jersey. One Leon Johnson was in the apartment. As Fisher engaged Johnson in a conversation, Oliver struck Johnson in the head with a four-foot metal pipe. Oliver stole $100 and crack cocaine from Johnson, which he later shared with Fisher. The brutal assault caused a blood clot in Johnson's brain and fractures of his skull. Johnson was in a coma for four days and has permanent brain damage. A jury convicted defendant of robbery in the first-degree and aggravated assault. Following his conviction, the prosecutor moved for imposition of a life sentence pursuant to the Three–Strikes Law.

Defendant's criminal record displayed a history of violent offenses. In 1973, defendant was convicted of robbery under *N.J.S.A.* 2A:141–1. The trial court determined that this crime was considered a "first-strike," because defendant's sentence was equivalent to that for first-degree robbery as defined in the current criminal code at *N.J.S.A.* 2C:15–1. In 1979, defendant was again convicted of robbery under *N.J.S.A.* 2A:141–1 and atrocious assault and battery under *N.J.S.A.* 2A:90–1. Although the Appellate Division reversed the trial court's determination that the 1973 crime was a "first-strike" because the offense did not demonstrate the use of force or involve a deadly weapon, the court agreed that the 1979 crimes were "substantially equivalent" to a *N.J.S.A.* 2C:15–1b conviction. In 1986, defendant was convicted on three separate counts of first-degree robbery. This conviction was considered an unquestioned "strike." Depending on the analysis of the 1979 conviction, defendant's present conviction for

robbery counts as either a "second" or "third" strike under New Jersey's Three–Strikes Law. *N.J.S.A.* 2C:43–7.1a.

The trial court considered the constitutional objections raised by defendant and in a thorough and comprehensive opinion, found the Three–Strikes Law to be constitutional. 298 *N.J.Super.* at 566, 689 *A.*2d 876. The court sentenced defendant on the first-degree robbery offense to a term of life imprisonment with no eligibility for parole. On appeal, the Appellate Division affirmed the conviction and sentence and upheld the constitutionality of the Three–Strikes Law substantially for the reasons stated by the Law Division. 316 *N.J.Super.* 592, 720 *A.*2d 1001 (App.Div.1998). We granted defendant's petition for certification. 158 *N.J.* 74, 726 *A.*2d 937 (1999).

## II

We first consider Oliver's general constitutional challenges to the Three–Strikes Law. The statute provides, in relevant part:

A person convicted of a crime under any of the following: *N.J.S.* 2C:11–3; subsection a. of *N.J.S.* 2C:11–4; a crime of the first degree under *N.J.S.* 2C:13–1, paragraphs (3) through (6) of subsection a. of *N.J.S.* 2C:14–2; *N.J.S.* 2C:15–1; or section 1 of *P.L.* 1993, c. 221 (C. 2C:15–2), who has on two or more prior and separate occasions been convicted of a crime under any of the foregoing sections or under any similar statute of the United States, this state, or any other state for a crime that is substantially equivalent to a crime under any of the foregoing sections, shall be sentenced to a term of life imprisonment by the court, with no eligibility for parole.

[*N.J.S.A.* 2C:43–7.1a. 2]

Oliver argues that the Three–Strikes Law violates several constitutional principles: double jeopardy, separation of powers, *ex post facto* prohibition, prohibition against cruel and unusual punishment, and the guarantees of equal protection of the law, and of due process of law. For convenience, we generally adopt the

---

2 The trial court reasoned that because *N.J.S.A.* 2C:43–7.1b(1), which prescribes extended terms for repeat violent offenders, specifically refers to second-degree robbery, *N.J.S.A.* 2C:43–7.1a applies only to first-degree robbery. The State agrees with this interpretation.

format of the Law Division's opinion that accurately stated the relevant legal principles. We simply abbreviate the discussion.

## A. Double Jeopardy

■ Oliver contends that the Three–Strikes Law violates the double jeopardy clause of state and federal constitutions because the law imposes multiple punishments for the same offense. He argues that he has already served his punishment for his previous strikes; he cannot be punished again for them by counting them against him in the sentence for the December 1995 assault. Although the double jeopardy clause protects against the imposition of two punishments for the same offense, the Supreme Court has held that recidivist statutes that enhance punishment based on prior offenses do not violate double jeopardy guarantees because "the enhanced punishment imposed for the later offense 'is not to be viewed as either a new jeopardy or additional penalty for earlier crimes,' but instead as a 'stiffened penalty for the latest crime, which was considered to be an aggravated offense because it is a repetitive one.'" *Witte v. United States*, 515 *U.S.* 389, 400, 115 *S.Ct.* 2199, 2206, 132 *L.Ed.*2d 351, 364 (1995) (citing *Gryger v. Burke*, 334 *U.S.* 728, 732, 68 *S.Ct.* 1256, 1258, 92 *L.Ed.* 1683 (1948)).

## B. Separation of Powers

■ Oliver contends that the Three–Strikes Law violates the principle of separation of powers because it impermissibly increases the discretionary power of prosecutors while stripping the judiciary of all discretion to craft sentences. Defendant contends that suspension of sentences is an inherent judicial power protected by our Constitution from legislative interference. *N.J. Const.* art. III, ¶ 1 and art. IV, § I, ¶ 1. In order to avoid constitutional difficulties, he urges us to construe the statute to permit judges to apply the statute at their discretion.[3]

---

[3] In *People v. Superior Court (Romero)*, 13 *Cal.*4th 497, 53 *Cal.Rptr.*2d 789, 917 *P.*2d 628 (1996), the California Supreme Court read discretion into its Three–

The Supreme Court has held under federal law that "Congress has the power to define criminal punishments without giving the courts any sentencing discretion." *Chapman v. United States,* 500 *U.S.* 453, 467, 111 *S.Ct.* 1919, 1928, 114 *L.Ed.*2d 524, 539 (1991) (citing *Ex Parte United States,* 242 *U.S.* 27, 37 *S.Ct.* 72, 61 *L.Ed.* 129 (1916)). We considered the same issue in *State v. Des Marets,* 92 *N.J.* 62, 80–81, 455 *A.*2d 1074 (1983), and held:

> This issue of legislative power to preclude judicial suspension of sentences may be thought of as subsumed in the larger issue of power to enact mandatory sentencing laws in the first place. As suggested above, that latter power would not amount to much if it did not include the former. A recent confirmation of the power to mandate imprisonment is found in our dictum in *State v. Bausch,* 83 *N.J.* 425, 416 *A.*2d 833, where we noted that "the judiciary has no power ... to lessen or reduce a sentence where the Legislature has provided a mandatory penalty...."

## C. *Ex Post Facto*

■ Oliver contends that the Three–Strikes Law violates the *Ex Post Facto Clause* because it changes the legal consequences of his prior bad acts. *See U.S. Const.,* art. I, § 10, cl. 1; *N.J. Const.,* art. IV, § 7, ¶ 3. The Supreme Court has held that recidivist statutes do not violate the *Ex Post Facto Clause* if they were on the books at the time the triggering offense was committed. *See, e.g., Gryger v. Burke,* 334 *U.S.* 728, 732, 68 *S.Ct.* 1256, 1258, 92 *L.Ed.* 1683 (1948) (holding that sentence as a habitual criminal is not viewed as a new jeopardy or additional penalty for earlier crimes; rather it is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because it is a repetitive one). The Three–Strikes Law was enacted in June of 1995 and Oliver committed this offense in December of that year.

---

Strikes Law, allowing a court to exclude a prior strike. California's law, however, permits a third strike and enhanced sentence for any number of violent or non-violent offenses. *See* Cal.Penal Code § 667(c) (West Supp.1999); Michael D. Harris, *Garcetti Calls for New Three Strikes Law,* L.A. Daily J., June 9, 1994, at 2.

### D.  Cruel and Unusual Punishment

■ Oliver argues that his sentence amounts to cruel and unusual punishment in violation of the Eighth Amendment of the Constitution and *N.J. Const.*, art. I, ¶ 12. We have generally avoided entering the debate among the several members of the Supreme Court concerning the Eighth Amendment's proscription against cruel and unusual punishment. *Harmelin v. Michigan*, 501 *U.S.* 957, 111 *S.Ct.* 2680, 115 *L.Ed.*2d 836 (1991), in which a life sentence without possibility of parole for possession of cocaine was upheld, produced five separate opinions. We have stated simply that

> [t]he State and Federal Constitutions require a three part inquiry in determining whether punishment is unconstitutionally cruel and unusual: First, does the punishment for the crime conform with contemporary standards of decency? Second, is the punishment grossly disproportionate to the offense? Third, does the punishment go beyond what is necessary to accomplish any legitimate penological objective?
>
> [*State v. Maldonado*, 137 *N.J.* 536, 556, 645 *A.*2d 1165 (1994)(citing *State v. Ramseur*, 106 *N.J.* 123, 169, 524 *A.*2d 188 (1987) )].

A comparison of statutes from this state and from other jurisdictions indicates that New Jersey's Three–Strikes Law is consistent with contemporary standards of decency. The federal government and at least twenty-four other jurisdictions have enacted statutes in various forms that in varying degrees impose life sentences for three-time violent offenders. *See* John Clark, et. al., *"Three Strikes and You're Out": A Review of State Legislation* (NCJ 165369, U.S. Dep't. of Justice, Office of Justice Statistics, 1997) (reporting that twenty-four states and the federal government enacted such laws between 1993–1995). New Jersey has more finely tuned its law by limiting the number and types of violent offenses that fall within the purview of the statute. Thus, one cannot be sentenced to life in prison under New Jersey's Three–Strikes Law for passing a bad check or stealing a loaf of bread.

Second, the punishment is not grossly disproportionate to the offense. As a three-time offender, the defendant was already subject to New Jersey's Habitual Offender Act, *N.J.S.A.* 2C:43–7.

Under the provisions of that Act, defendant could have been sentenced to life imprisonment with 25 years parole ineligibility for the first-degree robbery offense. *N.J.S.A.* 2C:43–7(a)(2) and (b). Often a court will be authorized to impose a consecutive sentence for other unmerged offenses.

Third, the punishment does not go beyond that which is necessary to accomplish any legitimate penological objective. The statute was a response to a genuine legislative concern that repeat offenders pose a unique danger to society such that society could not be protected without the provisions of this Act. The punishment does not endure long after any need to deter will have passed. The statute contains a provision that after 35 years of imprisonment and attaining age 70 a person shall be deemed eligible for parole if the person does not pose a danger to society. *N.J.S.A.* 2C:43–7.1e.

### E. Equal Protection

■ Initially, we note that New Jersey's Three–Strikes Law is not subject to challenge on the basis that it vests arbitrary discretion in a prosecutor to decide whether to charge a defendant as a three-strikes defendant. *See State v. Lagares*, 127 *N.J.* 20, 601 *A.*2d 698 (1992) (requiring that Attorney General adopt guidelines to assist prosecutorial decision-making with respect to enhanced drug sentences). The Three–Strikes Law is mandatory once the offender falls within the scope of the Act. *N.J.S.A.* 2C:43–7.1a. As the trial court acknowledged in its separation of powers analysis, prosecutorial guidelines are unnecessary under the Act because the Legislature has set the penalty and refused to provide prosecutorial veto power of a trial judge's decision. 298 *N.J.Super.* at 550–51, 689 *A.*2d 876. Finally, there has been no showing that the Three–Strikes Law has a disparate impact on minorities.

### III

Having held the Three–Strikes Law to be generally constitutional, we reach Oliver's contention, that even if the sentencing law is generally constitutional he has only two valid "strikes" against

him and that insufficient procedural protections were afforded to him. (The Law Division treated this latter point under its Due Process analysis.) We consider that procedural argument first.

## A.

Whether a defendant is subject to the Three–Strikes Law must be established on notice to the defendant at a separate sentencing proceeding. *N.J.S.A.* 2C:43–7.1d. A sentencing proceeding, like a criminal trial, must satisfy the requirements of due process. Due process at sentencing typically requires that the government prove sentence-enhancing factors by a preponderance of the evidence. *McMillan v. Pennsylvania,* 477 *U.S.* 79, 106 *S.Ct.* 2411, 91 *L.Ed.*2d 67 (1986). Although *McMillan* held that a preponderance standard was generally constitutional, the court suggested that a different question would be presented if the magnitude of a contemplated sentencing departure is sufficiently great that the sentencing process can fairly be characterized as a "tail which wags the dog" of the substantive offense. 477 *U.S.* at 88, 106 *S.Ct.* at 2417, 91 *L.Ed.*2d at 77. It has thus been stated that the preponderance standard is not constitutionally adequate in all sentencing cases. Rather, due process requires a higher standard of proof when the factor to be proved would have an extremely disproportionate effect on the sentence relative to the offense of conviction. *United States v. Restrepo,* 946 *F.*2d 654, 659–60 (9 th Cir.1991 *en banc* ).

"The function of the standard of proof, as that concept is embodied in the Due Process Clause and in the realm of fact finding, 'is to instruct the fact finder concerning the degree of confidence our society thinks he [or she] should have in the correctness of factual conclusions for a particular type of adjudication.'" *Addington v. Texas,* 441 *U.S.* 418, 423, 99 *S.Ct.* 1804, 1808, 60 *L.Ed.*2d 323, 329 (1979) (citations and internal quotation marks omitted). In the analogous context of our sex offender notification laws, the Third Circuit has imposed a standard of clear and

convincing proof as a predicate to employment of sex offender notification laws. *E.B. v. Verniero,* 119 *F.*3d 1077 (3 rd Cir.1997).

The trial court reasoned that the Code provisions adequately met such constitutional requirements:

*N.J.S.A.* 2C:1–13d provides guidelines for ascertaining the burden necessary to prove a fact which is not an element of the offense. This statute provides:

d. When the application of the code depends upon the finding of a fact which is not an element of an offense, unless the code otherwise provided:

(1) The burden of proving the fact is on the prosecution or defendant, depending on whose interest or contention will be furthered if the finding should be made; and

(2) The fact must be proven to the satisfaction of the court or jury, as the case may be.

[*N.J.S.A.* 2C:1–13d.]

This subsection is an independent provision, dealing exclusively with fact issues that are collateral to the basis criminal case. It is only when the application of the Code depends upon a finding of fact unrelated to an element of an offense that the Code allocates burdens under this subsection in accordance with the interest to be furthered. *See State v. Ingram [John Terra],* 98 *N.J.* 489, 493, 488 *A.*2d 545 (1985).

Therefore, the proper standard of proof is 'to the satisfaction' of the court or jury. It is an ambiguous standard, *but is at least proof by a preponderance of the evidence;* beyond that, the issue is left open to the courts.

[298 *N.J.Super.* at 560, 689 *A.*2d 876 (emphasis added).]

Given the necessary flexibility required by the Code, we are satisfied that trial courts will exhibit under the preponderance standard "the degree of confidence our society thinks he [or she] should have in the correctness of [its] factual conclusions...." *Addington, supra,* 441 *U.S.* at 423, 99 *S.Ct.* at 1808, 60 *L.Ed.*2d at 329. In *McMillan,* the Court observed that the sentencing factor, visible possession of a firearm in the commission of the charged crime, was a fact that could be readily ascertained "within the case context." *United States v. Kaluna,* 192 *F.*3d 1188, 1205 (1999) (citing *McMillan v. Pennsylvania,* 477 *U.S.* 79, 84, 106 *S.Ct.* 2411, 2415, 91 *L.Ed.*2d 67 (1986)). Although the sentencing factors here, commission of two prior designated crimes, are not within the "case context" of the third strike, those sentencing factors can almost always be readily determined from the face of prior sentencing records. For example, the 1986 judgment of conviction

of first-degree robbery under *N.J.S.A.* 2C:15–1b conclusively established a prior strike. The difficulty in this case arises because two of the prior convictions were "2A" crimes committed under the prior criminal code.

### B.

Defendant's conviction of first-degree robbery in this case represented his sixth conviction for a robbery offense. 298 *N.J.Super.* at 563, 689 *A.*2d 876. Because this robbery offense fell within a ten year period from the date of his last release from confinement, the Act applied to defendant's crime. *N.J.S.A.* 2C:43–7.1c. As noted, the 1986 conviction was an unquestioned strike. Because the sentencing factor was not apparent from the face of the "2A" judgments, the trial court analyzed the records of the relevant prior convictions, and investigative pre-sentence reports to determine whether, in fact, defendant had committed the predicate three strikes. Based on its analysis, the court held that defendant's 1973 and 1979 pre-Code robbery convictions under *N.J.S.A.* 2A:141–1 were each "for a crime that is substantially equivalent to a crime" of first-degree robbery, and therefore should be counted as strikes.[4] *Id.* at 565, 689 *A.*2d 876. The court stated:

> Under *N.J.S.A.* 2A:141–1 the maximum term of imprisonment for a robbery conviction was 15 years. In connection with his 1979 robbery conviction, defendant received a minimum term of imprisonment of 9 years and a maximum term of imprisonment of 12 years. Thus, defendant was exposed to a sentence within the 10 to 20 year range for his 1973 and 1979 pre-Code robbery convictions. Moreover, the actual sentence received by the defendant for the 1979 robbery conviction fell within the Code's first degree sentencing range.
>
> In addition, the facts of defendant's 1979 conviction resemble the facts in this case. With respect to the 1979 conviction, the victim there was walking toward the building located at 124 Hamilton Avenue in Paterson, on December 8, 1978, when

---

[4] The Appellate Division ruled that the 1973 conviction was not a strike because the State did not present any evidence of the nature, extent and consequence of defendant's criminal conduct during the 1973 robbery similar to that presented with the 1979 conviction. 316 *N.J.Super.* at 599, 720 *A.*2d 1001. Because the State did not cross-appeal, we do not discuss that offense.

she was approached from the rear by two individuals who struck her about the head with a hard object. They then proceeded to take $70 from her pocket. The victim knew one of her assailants who she later identified as Oliver. She was then taken to St. Joseph's Hospital Emergency Room and was treated for injuries to her head.

In the present case, defendant was convicted of striking the victim from the rear on the head with a pipe and taking cash and drugs. Thus, this court finds the nature and extent of the 1979 and 1995 crimes to be "substantially equivalent" to each other.

[298 *N.J.Super.* at 565–566, 689 *A.2d* 876 (footnotes omitted).]

Defendant argues that the 1979 robbery conviction did not require that any degree of force be attendant to the conviction and that his plea of guilty to "2A" robbery was not at all tantamount to a plea to "2C" robbery in the first-degree that requires that the actor "purposefully inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon." *N.J.S.A.* 2C:15–1b.

The statute underlying defendant's 1973 and 1979 robbery convictions, *N.J.S.A.* 2A:141–1, provided:

Any person who forcibly takes from the person of another, money or personal goods and chattels, of any value whatever, by violence or putting him in fear, is guilty of a high misdemeanor and shall be punished by a fine of not more than $5000, or by imprisonment for not more than 15 years, or both.

A separate statute, *N.J.S.A.* 2A:151–5 provided that a person committing various offenses including robbery,

*when armed with or having in his possession any firearm,* whether or not capable of being discharged *or dangerous instrument of any kind* [such as a blackjack, metal knuckles, dagger, stiletto, or any object or device, whether toy or imitation, having an appearance similar to or capable of being mistaken for any of the foregoing] shall, in addition to the punishment provided for the crime, be punished on a first conviction by imprisonment for not less than one nor more than 10 years, upon a second conviction by imprisonment for not less than 3 years nor more than 15 years; upon a third conviction by imprisonment for not less than 5 nor more than 20 years; and upon a fourth or subsequent conviction, by imprisonment for not less than 10 years nor more than for life, in the discretion of the court. *No such additional punishment shall be imposed unless the indictment shall have averred that the person was armed with or had in his possession any such instrument and conviction was had thereon.* (Emphasis added).

A first-degree robbery conviction under the Code requires an attempt to kill or inflict serious bodily injury or the involvement of a deadly weapon. *N.J.S.A.* 2C:15–1b. Serious bodily injury

means bodily injury that creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. *N.J.S.A.* 2C:11–1b. Defendant contends that no such circumstances were shown to have been involved in his 1979 conviction. Had defendant used a weapon of any sort, he claims that he would also have been indicted and convicted for robbery while armed under *N.J.S.A.* 2A:151–5.

Instead, defendant claims that the judgment of conviction under *N.J.S.A.* 2A:141–1 established only that defendant forcibly took property by "violence" or "fear." These elements of the 2A crime of robbery establish nothing more than second-degree robbery under *N.J.S.A.* 2C:15–1a. Defendant further asserts that only through a conviction for robbery while armed or circumstances suggesting a risk of death or serious bodily injury could the State prove that the 2A robbery convictions were equivalent to first-degree crimes. Because the State failed to demonstrate the requisite "proofs" to a jury that defendant caused or attempted to cause serious bodily injury, defendant asserts that his 1979 conviction should not be deemed substantially equivalent to a conviction for first-degree robbery.

We disagree. The "deadly weapon" employed in this case may not have fit the more precise definition of a "dangerous instrument" under *N.J.S.A.* 2A:151–5. In order to establish the offense of robbery in the first-degree, it is necessary only to establish that the actor have possessed a "deadly weapon." Deadly weapon includes any firearm or

> other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury.
>
> [*N.J.S.A.* 2C:11–1c.]

The victim was quite specific that she believed that her scalp was split by an "object" other than defendant's hand. In her statement to the police and grand jury testimony, she said:

Q  Did you see a weapon or anything?

A  No I didn't see anything but they must have had something.

Q  Why do you say that?

A  Because the blow open my head up not the fall on the steps, it was a hard object that struck me.

. . . .

Q  And do you know what it was that hit you in the back of the head?

A  No.

Q  Could it have been a hand?

A  I don't think so.

. . . .

Q  And did you go to the hospital as a result of this?

A  Yes, I did.

Q  What type of injuries did you receive?

A  I received five stitches, in the back of my head.

The Code definition of a deadly weapon can be met by the subjective perception of the victim that the object was indeed "capable of producing ... serious bodily injury." *N.J.S.A.* 2C:11–1c. It was thus proven to "the satisfaction of the court," *N.J.S.A.* 2C:1–13d, that the 1979 robbery involving the use of an object that caused lacerations of the skull fell within the substantive definition of first-degree robbery under 2C:15–1b.[5]

The judgment of the Appellate Division is affirmed.

--------

[5] The trial court found that the 1979 and "2C" offenses were substantially equivalent because the sentence ranges were substantially equivalent. In the analogous context of resentencing under the 1979 Code of Criminal Justice, courts have held that "[w]hether a particular provision is a congruent offense does not turn on the degree of punishment." *State v. Reed,* 183 *N.J,Super.* 184, 190, 443 *A.2d* 744 (App.Div.), *certif. denied,* 91 *N.J.* 228, 450 *A.2d* 553 (1982). Generally an analysis of whether one offense is substantially similar to another depends on the essential elements of the two offenses. *See State v. Simon,* 161 *N.J.* 416, 510, 737 *A.2d* 1 (1999)(analyzing substantive elements of Pennsylvania murder law to determine if prior conviction of murder in Pennsylvania was substantially similar to a New Jersey murder conviction).

*For affirmance*—Justices O'HERN, GARIBALDI, STEIN, COLEMAN, and LONG—5.

*Opposed*—none.