# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4150-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ALEXANDER A. GREEN,

    Defendant-Appellant.

_____

> Argued October 29, 2025 – Decided May 26, 2026
>
> Before Judges Gummer, Paganelli, and Vanek.
>
> On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 23-01-0008.
>
> James H. Maynard argued the cause for appellant (Maynard Law Office, LLC, attorneys; James H. Maynard, on the briefs).
>
> Leslie-Ann M. Justus, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Leslie-Ann M. Justus, of counsel and on the brief).

PER CURIAM

After defendant Alexander A. Green pleaded guilty to endangering a child by knowingly possessing, viewing, or having under his control items depicting the sexual exploitation or abuse of a child, the State moved for the imposition of parole supervision for life (PSL) pursuant to N.J.S.A. 2C:43-6.4(a). The sentencing court granted that motion, included PSL in the sentence it imposed on defendant, and subsequently denied defendant's motion to modify the sentence. In this appeal, defendant challenges the court's imposition of PSL. We affirm.

I.

Google LLC reported to the National Center for Missing and Exploited Children that user "Alex Green" had uploaded media files of suspected child sexual abuse material to his Google drive account. The Center alerted law enforcement. Following further investigation, law-enforcement officers executed a search warrant at defendant's residence on December 15, 2021. After conducting a search pursuant to the warrant, officers identified videos of suspected child sexual abuse material on defendant's desktop computer. They subsequently arrested defendant, seized several electronic devices, and charged him in a complaint summons.

2

On January 12, 2023, a grand jury issued an indictment, charging defendant with third-degree endangering the welfare of a child by knowingly possessing, viewing, or having under his control between 100 and 1,000 items depicting the sexual exploitation or abuse of a child. N.J.S.A. 2C:24-4(b)(5)(b)(iii). In a February 5, 2024 plea form, defendant agreed to plead guilty to that charge, and the State agreed to recommend a sentence of ten days' incarceration in a county jail, PSL, and forfeiture of the seized devices. As set forth on the form, defendant otherwise faced a maximum sentence of a five-year term of imprisonment and a $15,000 fine.

Defendant also executed a "Supplemental Plea Form for Certain Sexual Offenses (Megan's Law/[PSL]/Community Supervision for Life)." In that form, he acknowledged he understood that if he pleaded guilty to a crime of endangering the welfare of a child pursuant to N.J.S.A. 2C:24-4(b)(5)(b)(iii), "in addition to any other sentence, and upon motion of the prosecutor, the court shall impose a special sentence of [PSL], unless the court finds on the record that [PSL] is not needed to protect the community or deter [him] from future criminal activity." He also acknowledged that "being sentenced to [PSL] means that upon release from incarceration or immediately upon imposition of a suspended sentence . . . [he would] be subject to provision and conditions of

parole."  The form also provided defendant with information he acknowledged about other aspects of parole and the consequences of violating parole.

During the February 5, 2024 plea hearing, defendant confirmed he had executed the plea forms and that he had understood and answered the questions on the forms.  The court expressly addressed the PSL aspect of the plea agreement:

> There's not only the ten days in the Essex County Jail, but there's also parole supervision for life.  Parole supervision for life has a host of restrictions and requirements on it.  And . . . it's mandated that it continue for at least fifteen years.  You can make application to the court in fifteen years to be released from [PSL], but that depends on whether you picked [up] any new charges, . . . there's some other factors the court has to consider.  But you know or you should know that for at least the next fifteen years you would be on [PSL] if the court -- now keep in mind in this particular case it's not mandatory, but the State is requesting it.
>
>  . . . .
>
> And there are certain factors the court has to consider. What you should expect though going into this plea is that . . . the court will likely grant the application for [PSL] if all the requirements are met here.  If they're not met, then the court would not grant it.  But . . . making the decision to plea[d] you should expect that that is a possible outcome.  In other words, if I sentence you to [PSL] I don't want to hear from you, I didn't think that was happening.  I'm telling you it's a very likely possibility. . . .

. . . .

> [A]nd you need to understand with [PSL] there are a variety of restrictions as to who[m] you'll be able to associate with, certain devices I think you can have access to. And there's . . . no aspect of this being public, but it can interfere with certain choices that you want to make in terms of your life and where you can work, where you can live, and . . . internet . . . access to certain devices.

The court also provided defendant with information regarding the consequences of violating PSL. Defendant repeatedly confirmed his understanding of the information the court had provided regarding PSL.

When asked if he wanted to put anything on the record about the information the court had provided, defense counsel informed the court he anticipated asking the court at the sentencing hearing to impose probation instead of PSL but had advised defendant "he is to accept this plea with the presumption he would receive [PSL]" and that "it is exceedingly likely that the court will order [PSL] under the circumstances . . . ." The court again confirmed it was "very likely" the court would impose PSL, and defendant again acknowledged he understood the court's statement.

Defendant established a factual basis for the plea, admitting he knowingly had on his computer for "[his] personal viewing" over one hundred items depicting "child sexual abuse material [(CSAM)]," including a video "alleged to

represent a young toddler being sexually assaulted and apparently being killed." The court found defendant had provided an adequate factual basis for the plea; had pleaded guilty knowingly, intelligently, voluntarily, and after consulting with "very competent counsel who ha[d] negotiated a very favorable plea agreement"; had understood everything that had been discussed during the plea hearing, including the range of sentences that might be imposed; and had "knowingly, intelligently, and voluntarily waived his constitutional rights."

While awaiting sentencing, defendant underwent a mandatory evaluation by the Adult Diagnostic and Treatment Center (Avenel). Defendant also underwent psychosexual evaluations from two experts he had retained: Dr. Zachary Yeoman and Dr. Kenneth L. McNiel. Defendant also received a treatment summary and update from Dr. Stuart Leeds, his treating psychologist.

The State moved for the imposition of PSL pursuant to N.J.S.A. 2C:43-6.4. In opposition to the motion, defendant submitted a sentencing memorandum and the reports of Drs. Yeoman, Leeds, and McNiel. Defendant also submitted a letter he had written as well as letters from family members and friends.

The court heard argument on the motion and defendant's sentence during the July 19, 2024 sentencing hearing. Defendant asked the court not to sentence

6

him to county jail or PSL. Instead, defendant argued the court should impose five years' probation with special conditions of continued counseling and software monitoring by Dr. Leeds. Defendant asserted the community at large did not need protection from him because the record was devoid of evidence he had created pornography or tried to meet with children. Defendant highlighted that the expert witnesses had found him at low risk of reoffending.

Defendant contended the following mitigating factors applied: seven ("no history of prior delinquency or criminal activity"), N.J.S.A. 2C:44-1(b)(7); eight ("defendant's conduct was the result of circumstances unlikely to recur"), N.J.S.A. 2C:44-1(b)(8); nine (defendant's "character and attitude . . . indicate [he] is unlikely to commit another offense"), N.J.S.A. 2C:44-1(b)(9); ten ("defendant is particularly likely to respond affirmatively to probationary treatment"), N.J.S.A. 2C:44-1(b)(10); eleven ("imprisonment of . . . defendant would entail excessive hardship to . . . defendant"), N.J.S.A. 2C:44-1(b)(11); and fourteen (defendant was under twenty-six years of age), N.J.S.A. 2C:44-1(b)(14).

The State acknowledged defendant's treating therapist had provided a positive progress report. However, the State asserted none of the defense experts had reviewed or mentioned in their assessments the images found in

defendant's possession. The State referenced defendant's aptitude for computers and study of computer programming, raising concerns defendant could avoid detection if he resumed watching and possessing unlawful images. The State contended that monitoring by Dr. Leeds would be ineffective without PSL because there would be nothing to prohibit defendant from possessing devices without the therapist's knowledge. Asking the court to impose PSL and a ten-day period of incarceration in a county jail, the State argued the plea deal was "extremely lenient" given that defendant "would be facing state prison ordinarily under these circumstances."

The State contended the following aggravating factors applied: one ("nature and circumstances of the offense"), N.J.S.A. 2C:44-1(a)(1); three (risk of re-offending), N.J.S.A. 2C:44-1(a)(3); and nine (need to deter), N.J.S.A. 2C:44-1(a)(9). The State acknowledged the application of mitigating factors seven and fourteen but argued against consideration of the other factors requested by defendant.

As memorialized in an order and a judgment of conviction entered on July 19, 2024, the court granted the State's motion, sentencing defendant to PSL, requiring the forfeiture of all seized devices, and imposing $1,155 in fees and penalties. The court applied aggravating factors three and nine and mitigating

factors seven, ten, eleven, and fourteen and found them equally balanced. The court described "the number of images" possessed by defendant as "not minimal" but "extreme" and that some of the images were "amongst the most offensive" the court had ever "encountered." The court characterized the plea agreement as a "very significant departure" from the potential state-prison term that could be imposed under these circumstances, "lenient," and "extremely beneficial" to defendant. The court took into consideration defendant's age at the time of his arrest and when he began to engage in the behavior at issue, lack of prior contact with the criminal justice system, supportive family and friends, "very favorable" expert reports, medical history, and gainful employment. The court declined to impose the State's requested jail sentence, finding incarcerating defendant for ten days served no real purpose and would constitute a serious injustice that would override the need to deter others.

The court imposed PSL because it was unable to find PSL was "not needed to protect the community or deter . . . defendant from future criminal activity." The court found placing defendant on probation while monitored by a private doctor would not sufficiently protect the public, ensure compliance, or deter defendant from engaging in the same conduct in the future. The court referenced defendant's statement during the Avenel evaluation that he had not tried to stop

9

viewing CSAM until he was arrested. The court concluded that someone with defendant's computer skills could "easily thwart" Dr. Leeds's proposed monitoring efforts and stressed the importance of putting "strict procedures in place to deter [defendant] from future activity."

On September 11, 2024, defendant moved to modify his sentence pursuant to Rule 3:21-10(a). Defendant asked the court to vacate the imposition of PSL and sentence him to a five-year term of probation. After hearing argument, the court denied the motion in a September 27, 2024 oral decision and an October 1, 2024 order.

Defendant appeals from the July 19, 2024 judgment of conviction, the July 19, 2024 order granting the State's PSL motion, and the October 1, 2024 order denying defendant's modification motion. Defendant presents in his merits brief the following arguments for our consideration:

> I. THE PUBLIC SAFETY PURPOSE FOR IMPOSING PAROLE SUPERVISION FOR LIFE FOR CERTAIN CS[A]M OFFENSES REQUIRES AN ASSESSMENT OF THE OFFENDER, NOT THE OFFENSE.
>
> A. The Sentencing Court Focused on the Offense, Not the Offender, When Imposing PSL Using an Unspecified Burden of Production and Persuasion, and Undetermined Standard of Proof.

B.   The Language of the PSL Statute Makes Clear the Legislative Intent that the Focus of the PSL Determination [Should] Be the Offender, Not the Offense.

C.   PSL Resembles "Second Tier" Sentencing Provisions For Which the Focus Is On the Offender, Not the Offense.

D.   Guidance From the Appellate Division Is Necessary to Prevent Arbitrary Imposition of PSL Based on the Absence of any Standards to be Used by Prosecutors (When Moving for PSL,) and by Sentencing Courts (When Deciding Whether to Impose PSL.)

1. The language of the PSL statute must not be interpreted to place any burden of production or persuasion on the Defendant.

2.   Sentencing courts require guidance regarding the scope of their discretion in order to avoid arbitrary and capricious imposition of PSL.

3. When seeking an enhanced, punitive sentence, the burden is on the State to produce evidence in support of that motion, and to persuade the court that it should impose the enhanced sentence.

4. The appropriate standard of proof on motions to impose PSL is the "clear and convincing evidence" standard.

11

5. Irrespective of whether the State presents evidence in support of a PSL motion, or what that evidence is, the Sentencing Court must make its own independent assessment of the evidentiary record, and then make its factual findings on the record.

E. Application of the Burdens of Proof and Persuasion, and the Appropriate Standard of Proof, to the Sentencing of [defendant].

Defendant presents these arguments in his reply brief:

I. A RECENT, PUBLISHED, APPELLATE DIVISION DECISION CONTROLS, AND REQUIRES HEIGHTENED DUE PROCESS PROTECTIONS FOR DEFENDANTS SUBJECT TO IMPOSITION OF DISCRETIONARY PSL.

A. New Case Law Precedent, Currently Under Review by the New Jersey Supreme Court, Requires Factual Findings in Support of an Enhanced Sentence To Be Made by a Jury.

B. The State's Response Brief Concedes All the Facts and Law Necessary to Apply [State v. ]Carlton[, 480 N.J. Super. 311 (App. Div. 2024), rev'd, 262 N.J. 629 (2026),] to Sentencing Decisions Imposing Discretionary PSL.

1. Imposition of sentencing enhancements not authorized by the

12

criminal conviction, require additional procedural due process protections.

2. For certain offenses, imposition of PSL is not automatic upon conviction, but requires a motion by the State.

3. The State's Response Brief acknowledges that PSL is a punitive sentence, and an enhancement of punishment above that authorized by a defendant's conviction.

4. The State's Response Brief acknowledges that facts — other than those necessary to support a conviction for a criminal offense — must be found before PSL can be imposed.

5. The need for greater procedural due process protections for imposition of extended terms under Carlton, and imposition of Discretionary PSL, are the same.

II. DEFENDANT GREEN IS NOT BARRED FROM ASKING THIS COURT TO APPLY CARLTON TO THE IMPOSITION OF DISCRETIONARY PSL.

A. Defendant Seeks to Extend the Constitutional Holdings of Carlton to the Analogous PSL Statute and Is Thus Not Barred From Raising the

Question for the First Time on Appeal.

B. The Appellate Court Has Discretion To Review Issues of Public Importance Not Raised Below.

C. The State's Reliance on Case Law Regarding Presumptive Sentences Resulting from a Criminal Conviction Is Not Relevant to the Question Before This Court.

[III.] THE TRIAL COURT ABUSED ITS DISCRETION BY RELYING SOLELY ON THE OFFENSE CONDUCT, RATHER THAN THE OFFENDER, WHEN IMPOSING PSL.

II.

We review a trial court's sentencing decision under an abuse-of-discretion standard. State v. Konecny, 250 N.J. 321, 334 (2022). "We 'must not substitute [our] judgment for that of the sentencing court.'" State v. Vanderee, 476 N.J. Super. 214, 235 (App. Div. 2023) (alteration in original) (quoting State v. Liepe, 239 N.J. 359, 370 (2019)) (internal quotation marks omitted). We apply that deferential standard as long as the sentencing court "follow[ed] the [Criminal] Code and the basic precepts that channel sentencing discretion." State v. Case, 220 N.J. 49, 65 (2014). "A court abuses its discretion when its 'decision is made without a rational explanation, inexplicably departed from established policies,

14

or rested on an impermissible basis.'" State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)) (internal quotation marks omitted).

N.J.S.A. 2C:43-6.4(a) expressly provides that a court sentencing a defendant convicted of endangering the welfare of a child pursuant to N.J.S.A. 2C:24-4(b)(5)(b)(iii) "shall include, upon motion of the prosecutor, a special sentence of [PSL] in addition to any sentence authorized by Title 2C . . . unless the court finds on the record that the special sentence is not needed to protect the community or deter the defendant from future criminal activity."  That procedure was followed in this case.  The State moved for imposition of PSL; after considering the submissions and arguments of the parties, the court granted the motion, explaining on the record it was unable to find PSL was "not needed to protect the community or deter . . . defendant from future criminal activity." Cf. State v. Steingraber, 465 N.J. Super. 322, 329-30 (App. Div. 2020) (remanding for a limited resentencing proceeding when State did not move for PSL and trial court did not engage in the required analysis before imposing it).

Defendant in his merits brief argues the court abused its discretion by imposing PSL based on a misconception of the law.  Specifically, defendant contends the court erred in focusing "on the [o]ffense, [and n]ot the [o]ffender"

and in failing to consider "factors specific to the offender." That assertion is belied by the record. The court considered at length information specific to defendant, including his age at sentencing and when he committed the offense at issue; evaluations about him prepared by Avenel, his expert witnesses, and his treating psychologist; his lack of prior contact with the criminal justice system; his support network; his medical history; and his current employment. In imposing PSL, the court expressly considered defendant's computer skills and admission during the Avenel evaluation that he had not tried to stop viewing CSAM until he was arrested.

Defendant disregards some of those individual assessments because the court made them while determining the applicable aggravating and mitigating factors and before it addressed the PSL motion. However, "sentencing is a holistic endeavor." State v. Torres, 246 N.J. 246, 272 (2021). On this record and viewing the sentence as a whole, we perceive no improper focus or misapplication of the law.

The State bears the burden of proving "sentence-enhancing factors." State v. Oliver, 162 N.J. 580, 590 (2000). Without pointing to any particular language the court used, defendant questions whether the court, in deciding to sentence defendant to PSL, placed the burden on defendant to prove PSL is not needed to

protect the public or deter him from future criminal activity. The State concedes "the burden is on the State to prove to the sentencing court's satisfaction by the preponderance of the evidence standard that PSL should be imposed on defendant" and that "a defendant has no obligation to present any evidence in favor of a more lenient sentence." Nothing in the court's decision indicates the court improperly shifted that burden.

"Due process at sentencing typically requires that the government prove sentence-enhancing factors by a preponderance of the evidence." Ibid. However, "the preponderance standard is not constitutionally adequate in all sentencing cases. Rather, due process requires a higher standard of proof when the factor to be proved would have an extremely disproportionate effect on the sentence relative to the offense of conviction." Ibid. Defendant contends courts should apply the clear-and-convincing standard when deciding PSL motions, not the preponderance-of-the-evidence standard. We disagree.

Defendant likens PSL to certain determinations under Megan's Law, N.J.S.A. 2C:7-1 to -23, such as community notification and internet publication, that a court considers under a clear-and-convincing standard. See id. at 590-91 (recognizing "the Third Circuit . . . imposed a standard of clear and convincing proof as a predicate to employment of sex offender notification laws" in E.B. v.

17

Verniero, 119 F.3d 1077 (3d Cir. 1997)); see also In re Registrant J.G., 169 N.J. 304, 330 (2001) (adopting a clear-and-convincing standard in case involving Megan's Law). But PSL is not akin to those provisions of Megan's Law.

In E.B., the Third Circuit found the "factual determinations required in a Megan's Law hearing are of greater complexity than those typically involved in sentencing." 119 F.3d at 1111. In contrast, the court's determination in a PSL motion of the "need[] to protect the community or deter the defendant from future criminal activity," N.J.S.A. 2C:43-6.4(a), falls squarely within the court's sentencing considerations. See, e.g., N.J.S.A. 2C:44-1(a)(3) (aggravating factor regarding risk of re-offending); N.J.S.A. 2C:44-1(a)(9) (aggravating factor regarding need to deter). PSL does not involve the same privacy or reputational considerations as Megan's Law. See Doe v. Poritz, 142 N.J. 1, 103 (1995) (acknowledging "[t]he harm to [a Megan's Law registrant's] reputation" and "incursion on his right of privacy"). Because the provision for PSL under N.J.S.A. 2C:43-6.4(a) does not involve "an extremely disproportionate effect on the sentence relative to the offense of conviction," we conclude courts should decide PSL motions under the preponderance-of-the-evidence standard. Oliver, 162 N.J. at 590. We perceive no misapplication of the standard in this case.

For the first time on appeal, defendant raises due-process and constitutionality concerns premised on what he describes as the "ambiguous statutory language of N.J.S.A. 2C:43-6.4(a)." We briefly address those arguments, even though he did not present them to the trial court. See State v. Dangcil, 248 N.J. 114, 132 n.4 (2021) (finding "[g]enerally, an appellate court will not consider issues, even constitutional ones, which were not raised below").

When interpreting a statute, we apply well-settled rules of statutory construction so that we may "determine and give effect to the Legislature's intent." In re H.D., 241 N.J. 412, 418 (2020) (quoting N.J. Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 20 (2013)). "[S]tatutory construction begins with an examination of the plain language of the statute, 'ascrib[ing] to the . . . words their ordinary meaning and significance.'" State v. Higginbotham, 257 N.J. 260, 280 (2024) (omission and second alteration in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "We 'may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.'" Ibid. (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). "If the plain language of a statute is clear, our task is complete." Musker v. Suuchi,

Inc., 260 N.J. 178, 186 (2025) (quoting Savage v. Township of Neptune, 257 N.J. 204, 215 (2024)).  Applying those principles and mindful that "[a] presumption of validity attaches to every statute," we perceive no ambiguity in the Legislature's plain language and, consequently, no due-process or constitutional infirmity in N.J.S.A. 2C:43-6.4(a).  State v. Lenihan, 219 N.J. 251, 266 (2014).

Our review of the record confirms defendant received all of the process he was due.  "A sentencing proceeding, like a criminal trial, must satisfy the requirements of due process."  Oliver, 162 N.J. at 590.  "Fundamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner."  Thomas Makuch, LLC v. Township of Jackson, 476 N.J. Super. 169, 187 (App. Div. 2023) (quoting Poritz, 142 N.J. at 106).  From the plea agreement as memorialized in the plea forms, defendant was on notice of the State's intention to seek PSL.  During the plea hearing, defense counsel confirmed he had discussed PSL with defendant, and the court reviewed at length the possible imposition of PSL and the ramifications of that special sentence.  Defendant repeatedly confirmed his understanding of the information provided to him.  Defendant exercised his right to oppose the State's PSL

motion. Defendant clearly had "an opportunity to be heard at a meaningful time and in a meaningful manner" and, thus, received due process. Ibid.

In his reply brief, defendant for the first time makes an argument based on our decision in Carlton, 480 N.J. Super. 311, which was issued before defendant submitted his merits brief and was subsequently reversed by the Supreme Court, State v. Carlton, 262 N.J. 629 (2026), as well as Apprendi v. New Jersey, 530 U.S. 466 (2000), and Erlinger v. United States, 602 U.S. 821, 834 (2024). We decline to consider that argument because "[r]aising an issue for the first time in a reply brief is improper." Berardo v. City of Jersey City, 476 N.J. Super. 341, 354 (App. Div. 2023) (alteration in original) (quoting Borough of Berlin v. Remington & Vernick Eng'rs, 337 N.J. Super. 590, 596 (App. Div. 2001)); see also Lenihan, 219 N.J. at 265 (same).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division