# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1022-18T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

HARRY L. THOMAS,

     Defendant-Appellant.

_____

          Argued telephonically November 22, 2019 –
          Decided December 20, 2019

          Before Judges Mayer and Enright.

          On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Accusation No. 18-02-0253.

          Robin K. Lord argued the cause for appellant (Robin Kay Lord and Helmer, Conley and Kasselman, PA, attorneys; Robin Kay Lord and Patricia B. Quelch, of counsel and on the brief).

          Jennifer Bentzel Paszkiewicz, Assistant Prosecutor, argued the cause for respondent (Scott A. Coffina, Burlington County Prosecutor, attorney; Jennifer Bentzel Paszkiewicz, of counsel and on the brief).

PER CURIAM

Defendant appeals from a July 27, 2018 order deeming his plea agreement valid and denying his motion to withdraw his guilty pleas. We affirm.

We need only summarize the facts pertinent to this appeal. In December 2017, defendant was charged with committing a number of offenses against five prepubescent girls, including: first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); three counts of second-degree sexual assault, N.J.S.A. 2C:14-(2)(b); and one count of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). Defendant initiated pre-indictment plea negotiations with the State and pled guilty two months after being charged.

Defendant faced up to sixty-five years in prison and $800,000 in fines, as well as additional assessments upon conviction for the offenses to which he pled guilty. However, in exchange for his guilty pleas, the State agreed to dismiss all remaining charges against defendant and recommended a twenty-year prison term with a twenty-year period of parole ineligibility on the first-degree charge of aggravated sexual assault, consistent with the "Jessica Lunsford Act" (JLA), N.J.S.A. 2C:14-2(a), (d). The plea agreement further allowed defendant to seek a fifteen-year prison term with a fifteen-year period of parole ineligibility on this charge.

A-1022-18T3

Due to the lengthy prison sentence contemplated for the aggravated sexual assault charge, the State recommended nonspecific prison terms on the four other charges listed in the plea agreement and recommended all sentences run concurrent to one another. Moreover, defendant consented to a waiver of his right to appeal and to a no-contact order regarding the victims and their families. Defendant also stipulated he would be subject to a five-year parole supervision period and Megan's Law requirements, N.J.S.A. 2C:7-1 to -23, upon his release, as well as the possibility of civil commitment for life on the aggravated sexual assault charge.

At the plea hearing, defense counsel notified the trial court that during his first meeting with his client, defendant made it "quite clear that [he] wished to resolve this matter pre-indictment, not so much for his sake," but in "consideration of . . . the families of the victims." In response to questioning from the court, defendant confirmed he was seventy-four years old, was fluent in English, held a Master's degree and two honorary doctorates, and was not under the influence of any substance impacting his ability to make decisions. Additionally, defendant testified no one threatened or coerced him to enter the plea deal. When asked if his attorney answered all his questions and if he was satisfied with counsel's representation, defendant answered, "[y]es."

Next, the trial judge carefully explained the ramifications of the plea agreement before defendant pled guilty. She specifically advised defendant, "there's going to be an aggregate sentence of somewhere between fifteen, do fifteen [years], and twenty, do twenty [years], based on all of these charges, essentially." Further, she instructed defendant he would have to submit to an evaluation at the Avenel Adult Diagnostic and Treatment Center (ADTC) and be subject to "all the Megan's Law requirements," which would include registration. Defendant affirmed he understood his exposure for imprisonment, as well as various other consequences flowing from the plea agreement.

Due to delayed reporting by the victims, defendant was not arrested until years after committing his offenses. Thus, immediately before he pled guilty, defendant testified he could not remember the exact dates and times of his offenses, but that he did not dispute "what [the victims] were saying" when he submitted to a police interview after the allegations "all came to light." Moreover, he agreed with defense counsel that it "remains the truth today" that he did not dispute his victims' allegations.

To provide a factual basis for the first-degree aggravated sexual assault charge, defendant admitted that on or about August 1, 2014, he committed "an

act of digital penetration" on K.V.[1] who was approximately nine-years old at the time. Next, he stipulated that on or about August 1, 2010, he "committed an act of sexual contact" upon nine-year-old M.S., which involved "a touching of the genitals or private areas" of the victim. He also testified that on or about August 1, 2000, when J.D. was approximately eight years old, he "did commit an act of sexual contact" upon her by "touching her genitals or vaginal area." Additionally, defendant affirmed that on August 1, 2010, when G.V. was roughly seven years old, he "did commit an act of sexual contact" upon her by "touching of the genitals or private areas." Lastly, defendant testified that on various days between 2008 and 2010, when he had a legal duty to watch K.C. (a minor born in 2000), he engaged in sexual conduct with her. He admitted to exposing himself to K.C., thereby impairing or debauching her morals. Further, defendant confirmed each offense occurred in Medford Township.

The trial judge found there was an adequate factual basis for each of the charges and that defendant entered into the plea agreement freely, knowingly and voluntarily. Accordingly, she accepted defendant's guilty pleas and fixed a tentative sentencing date, subject to defendant being evaluated at the ADTC.

---

[1] We refer to the minor victims by initials to protect their privacy. R. 1:38-3(d)(12).

A-1022-18T3

After defendant pled guilty, he engaged new counsel and moved to withdraw his guilty plea under State v. Slater, 198 N.J. 145 (2009). He also moved to vacate the plea agreement, insisting it called for an illegal sentence because it did not provide for a specific prison term on the aggravated sexual assault charge. The judge denied his motion on July 27, 2018.

She then heard from victims and their family members, as well as defendant, who expressed remorse for the "pain [he had] caused." Defendant added:

> I don't understand why I did those things. I would never hurt them, but I did . . . . I accept full responsibility . . . . And if ever my family needs to know that I'm sorry, I want them to know now. And that I . . . never, never in my wildest dreams thought that I would cause such pain to the people I love.

When defense counsel spoke at sentencing, she acknowledged her client "has a sickness . . . . It's something he couldn't control, according to the licensed experts at Avenel."

After conducting a qualitative aggravating and mitigating factor analysis, and weighting those factors, the judge found the higher end of the sentencing range was appropriate. She sentenced defendant to an eighteen-year prison term, with an eighteen-year period of parole ineligibility and a five-year period of parole supervision on the aggravated sexual assault charge. Further, she

6

sentenced defendant to an eight-year prison term on the remaining charges, subject to a three-year period of parole ineligibility. Standard fines, fees and penalties also were imposed for each charge. The judge directed that all sentences run concurrent to one another.

On appeal, defendant raises the following arguments:

POINT I:     THE TRIAL COURT ACCEPTED AN INVALID PLEA.

POINT II:    DEFENDANT'S PLEA IS INVALID BECAUSE THE FACTUAL BASIS DOES NOT SUPPORT ALL ELEMENTS OF THE CRIMES CHARGED IN COUNTS [ONE, TWO, THREE AND FOUR]. (Not raised below).

POINT III:   THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA.

We reject these arguments.

As to Point I, we note the JLA imposes a term of imprisonment of twenty-five years to life, with a period of parole ineligibility of at least twenty-five years, on an offender convicted of aggravated sexual assault when, as is the case here, a victim is less than thirteen years old. N.J.S.A. 2C:14-2(a)(1). However, the statute permits a prosecutor, "in consideration of the interests of the victim,"

7

to waive the twenty-five-year mandatory minimum and extend an offer under a plea agreement whereby a defendant can be sentenced to "a specific term of imprisonment of <u>not less than fifteen years</u>, during which the defendant shall not be eligible for parole." N.J.S.A. 2C:14-2(d) (emphasis added). If the sentencing court accepts such a negotiated plea agreement, it must sentence the defendant in accordance with that agreement. <u>Id.</u>

Our Supreme Court recently upheld the constitutionality of N.J.S.A. 2C:14-2(d), stating it "does not violate the separation of powers doctrine, provided that the State presents a statement of reasons explaining its decision to depart from the twenty-five-year mandatory minimum sentence specified in N.J.S.A. 2C:14-2(a)." <u>State v. A.T.C.</u>, __ N.J. __, __ (2019) (slip op. at 32). Although the "statement of reasons" requirement imposed by the <u>A.T.C.</u> Court did not exist when defendant pled guilty, we note the State explained on the record that defendant's victims were amenable to the plea agreement, and the State had

> discussed the numbers, the strengths, the weaknesses, the pros and cons with respect to a jury trial or resolving cases and . . . it was an informed decision and the family is content. [W]e've been very open and candid about the options, the [JLA] and the realistic possibilit[y] of [defendant] getting out considering the number and his age and his poor health, which is very minimal.

Defendant now argues, as he did at sentencing, that the plea agreement provided for an illegal sentence. His argument stems from the sentencing judge's discretion to impose a prison term which ranged between fifteen to twenty years. He claims the plea agreement was invalid because the judge, who accepted the plea deal, was not bound by a finite prison term. We are not persuaded by this argument.

"[T]he judiciary has no power . . . to mete out a punishment in excess of that prescribed by the Legislature or to lessen or reduce a sentence where the Legislature has provided a mandatory penalty." State v. Bausch, 83 N.J. 425, 433 (1980) (citations omitted). Instead, the court's discretion in sentencing is limited by the sentencing ranges given to it by the Legislature. State v. Oliver, 298 N.J. Super. 538, 549 (App. Div. 1996).

Under N.J.S.A. 2C:14-2(d), a judge cannot sentence a defendant to "less than fifteen years." However, the county prosecutor does not decide what the punishment shall be; the sentencing judge does. See State v. Todd, 238 N.J. Super. 445, 455 (App. Div. 1990). A trial judge always retains discretion to sentence a defendant, even if the State and the defendant have entered into a plea agreement. State v. Hess, 207 N.J. 123, 151 (2011); State v. Warren, 115 N.J. 433, 447-48 (1989). Moreover, a defendant has the right to argue for a

sentence less than the sentence recommended by the State. State v. Urbina, 221 N.J. 509, 515 (2015) (citing Warren, 115 N.J. 433).

Although a judge cannot impose a prison term of less than fifteen years under N.J.S.A. 2C:14-2(d), there is nothing in the wording of the statute to support the theory that a sentencing judge is bound by whatever finite prison term is recommended by the State, assuming the judge accepts the plea agreement.

It is well established that:

> the trial judge is best suited to determine an appropriate and fair sentence for a convicted defendant based upon the judge's knowledge, experience and judgment in this area. This is because the trial judge has the opportunity to observe the defendant; to learn the extent and the details of his criminal history; to hear the specific circumstances of the crime and the impact on its victims; and to compare the defendant and the crime with other offenders and crimes in the community.
>
> [Oliver, 298 N.J. Super. at 549-50.]

Were we to accept defense counsel's theory regarding the interpretation of N.J.S.A. 2C:14-2(d), we effectively would conclude that once a judge accepts a plea agreement, the JLA transfers sentencing discretion from judges to prosecutors. Such a conclusion would invite the danger of uneven application of the JLA by prosecutors. Alternatively, under defendant's theory, a trial court

could reject a plea agreement where the State recommends a finite prison term, notwithstanding the desire of the defendant, victims and the State to resolve the matter. Such a result would run counter to the very reason a State offers a reduced sentence pursuant to N.J.S.A. 2C:14-2(d). Indeed, the State, in deciding to offer the reduced sentence under this section of the statute, must consider the interests of the victim. One of those interests is the closure implicitly promised to victims in allowing the State to extend plea offers that deviate from the much harsher sentenced required under section (a) of the statute. See State v. Smullen, 118 N.J. 408, 418 (1990) (recognizing "child-sexual assault cases are extremely difficult, both for the defendants and the victims [and c]ourts taking pleas are undoubtedly conscious of the need to end the suffering"). Accordingly, we reject defendant's argument that his plea agreement provided for an illegal sentence.

We also find no merit to defendant's newly minted argument under Point II that he failed to provide a proper factual basis for all but one of his charges. Specifically, he argues that his factual basis for the aggravated sexual assault charge did not reflect where on the victim's body he digitally penetrated her. He also contends the factual bases for his sexual assault charges lacked the

11

acknowledgment that he committed acts of touching for the purpose of degrading or humiliating his victims or for his sexual arousal or gratification.

Our courts utilize a de novo standard of review when assessing whether factual admissions during a plea colloquy satisfy the essential elements of an offense. State v. Tate, 220 N.J. 393, 403-04 (2015) (citing Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995)). An appellate court is in the same position as the trial court in assessing whether the factual admissions during a plea colloquy satisfy the elements of an offense. Id. at 404.

An adequate factual basis for a guilty plea exists when the trial court is "satisfied from the lips of the defendant that he committed the acts which constitute the crime." State ex rel. T.M., 166 N.J. 319, 327 (2001) (citing State v. Barboza, 115 N.J. 415, 422 (1989)). In extracting the plea, the court must "ensure that the defendant has articulated a factual basis for each element of the offense to which he pleads." State v. Campfield, 213 N.J. 218, 232 (2013). This factual basis "should be examined in light of all surrounding circumstances and in the context of an entire plea colloquy." Ibid.

During a plea colloquy, "[t]he factual foundation may take one of two forms; defendant may either explicitly admit guilt with respect to the elements or may 'acknowledge[] . . . facts constituting the essential elements of the

crime.'" Id. at 231 (alterations in original) (quoting State v. Sainz, 107 N.J. 283, 293 (1987)). Regarding sex crimes, our courts have sustained the adequacy of the factual basis for a plea based largely on leading questions because the nature of the crime is "not the kind of thing people like to admit." Smullen, 118 N.J. at 415. Further, our courts have upheld guilty pleas where the defendant simply acknowledged facts posed through leading questions. See id. at 412-14 (finding that defendant's acknowledgement that he committed an act of sexual contact for his own sexual pleasure was sufficient to establish a factual basis). The Smullen Court explained the defendant's admissions, when taken in the context of the written plea agreement and defendant's consultations with his attorney, was sufficient to establish a factual basis. Id. at 415.

Here, defendant testified at his plea hearing that the plea form answers he gave were true. Such answers included his admission that he committed each of the five offenses listed on the plea form and that he understood the meaning of the charges. When asked by the judge if he had "every piece of information that [he needed] to enter into a knowledgeable plea here today," defendant testified, "[y]es, I do."

In response to certain leading questions from his attorney, defendant affirmed he did not dispute the allegations of his victims and had not disputed

those allegations when interviewed by police. Moreover, when defendant detailed his criminal acts against his victims, he acknowledged, one by one, the date and place of each crime, as well as the age of each victim at the time he perpetrated his criminal acts. As defense counsel elicited a factual basis for each charge, in all but one instance, he and the assistant prosecutor acknowledged the sufficiency of the factual basis for each plea upon its completion. To the extent counsel initially overlooked this acknowledgement for one charge, the record reflects the acknowledgment was provided in the context of a more global pronouncement at the conclusion of defendant's pleas, when the State proclaimed it was satisfied with the factual bases for the charges. At that point, the judge announced she, too, found "an adequate factual basis for each of the charges."

To convict defendant of first-degree aggravated sexual assault against K.V., under N.J.S.A. 2C:14-2(a)(1), the State had to prove he committed an act of sexual penetration with K.V. when she was less than thirteen years old. To convict defendant of sexual assault, under N.J.S.A. 2C:14-2(b), the State had to prove he committed acts of sexual contact with M.S., J.D. and G.V. when they were less than thirteen years old and he was at least four years older than his victims.

14

During his plea hearing, defendant prefaced his guilty pleas with an acknowledgement that he did not dispute his victims' allegations. He then specifically conceded he committed an act of digital penetration on K.V., who was roughly nine-years old at the time. When defense counsel concluded his questions about K.V., he stated, "I believe that's sufficient for Count One" (the aggravated sexual assault charge).

Defendant next admitted to committing separate "act[s] of sexual contact" against M.S., J.D. and G.V. In doing so, he affirmed the victims' birth dates and that he was at least four years older than his victims when he committed the acts of sexual contact. Sexual contact is defined under N.J.S.A. 2C:14-(2)(b) as an intentional touching, either directly or through clothing, of a victim's or defendant's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or gratifying the defendant.

Defendant did not testify as to the exact private area where he digitally penetrated K.V. nor did he explain whether he "committed an act of sexual contact" on M.S., J.D. or G.V. for the purpose of degradation, humiliation, arousal or gratification. Nonetheless, having reviewed the transcript of the plea hearing, we are satisfied defendant's testimony in that proceeding, including his concession he did not dispute the victims' allegations when they first arose nor

15

as of the plea hearing date, when viewed in the context of his plea agreement, sufficiently established defendant's guilt for the crimes of first-degree aggravated sexual assault and second-degree sexual assault. Accordingly, we perceive no basis to disturb the trial judge's determination that defendant provided an adequate factual basis for each offense.

Lastly, we find defendant's Point III lacks merit. We will not disturb a trial court's denial of a defendant's request to withdraw his guilty plea unless there was "an abuse of discretion which renders the lower court's decision clearly erroneous," State v. Simon, 161 N.J. 416, 444 (1999) (citing Smullen, 118 N.J. at 416); see State v. Munroe, 210 N.J. 429, 448 (2012) (quoting State v. Koedatich, 112 N.J. 225, 313 (1988)). We review a trial court's Slater analysis under an abuse of discretion standard "because the trial court is making qualitative assessments about the nature of a defendant's reasons for moving to withdraw his plea and the strength of his case and because the court is sometimes making credibility determinations about witness testimony." Tate, 220 N.J. at 404.

"The withdrawal of a guilty plea is not an absolute right," Simon, 161 N.J. at 444, and the defendant bears the burden of establishing a basis for relief. Slater, 198 N.J. at 156. "[F]indings made by the trial court when accepting the

plea, constitute a 'formidable barrier' which defendant must overcome before he will be allowed to withdraw his plea." Simon, 161 N.J. at 444 (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). "That is so because '[s]olemn declarations in open court carry a strong presumption of verity.'" Ibid. (alteration in original) (quoting Blackledge, 431 U.S. at 74). Additionally, whether a defendant seeks to withdraw a plea before or after sentencing, "[t]iming matters." Slater, 198 N.J. at 160. Thus, at or before sentencing, a "defendant shall be permitted to withdraw" a guilty plea if "the interests of justice would not be served by effectuating the [plea] agreement," Rule 3:9-3(e), and, in such cases, "courts are to exercise their discretion liberally to allow plea withdrawals." Id. at 156.

Our Supreme Court established the following four factors which trial judges must consider and balance when evaluating motions to withdraw a guilty plea: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Id. at 157-58.

"No single Slater factor is dispositive; 'if one is missing, that does not automatically disqualify or dictate relief.'" State v. McDonald, 211 N.J. 4, 16-

17 (2012) (quoting Slater, 198 N.J. at 162). With respect to the first factor, a "bare assertion of innocence is insufficient to justify withdrawal of a plea." Slater, 198 N.J. at 158. Instead, a defendant must "present specific, credible facts and, where possible, point to facts in the record that buttress [his or her] claim." Ibid. Indeed, there must be more than just a "change of heart" to warrant leave to withdraw a guilty plea once entered. Id. at 157.

The second Slater factor "focuses on the basic fairness of enforcing a guilty plea by asking whether defendant has presented fair and just reasons for withdrawal, and whether those reasons have any force." Id. at 159. Although we are not to approach the reasons for withdrawal with "skepticism," we "must act with 'great care and realism' because defendants often have little to lose in challenging a guilty plea." Id. at 160 (citing State v. Taylor, 80 N.J. 353, 365 (1979)).

Regarding the third Slater factor, our courts have held "defendants have a heavier burden in seeking to withdraw pleas entered as part of a plea bargain." Ibid. Yet, this factor receives minimal weight in the overall analysis because most criminal cases are resolved through plea bargains. Id. at 161.

As to the fourth Slater factor, our Supreme Court has confirmed "the critical inquiry . . . is whether the passage of time has hampered the State's

ability to present important evidence." Ibid. Nonetheless, "the State is not required to show prejudice if a defendant fails to offer proof of other factors in support of the withdrawal of a plea." Id. at 162 (citation omitted).

We need not repeat the sentencing judge's analysis of the Slater factors in relation to defendant's motion to withdraw his guilty plea. Based on the record presented, we are satisfied she carefully reviewed each Slater factor and properly determined defendant did not establish an entitlement to withdraw his guilty pleas. Indeed, the record reflects defendant presented little support for his motion and failed to sustain his burden of establishing that withdrawal of his pleas would serve the interests of justice. Id. at 156-57; see also R. 3:9-3(e).

To the extent we have not addressed defendant's remaining arguments, we find they lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION